Argued and submitted June 29, 1987, affirmed August 10, reconsideration denied
September 23, petition for review denied October 18, 1988 (307 Or 78)

**VEBERES,**
*Respondent,*

*v.*

**KNAPPTON CORPORATION,**
*Appellant.*

(A8408-04586; CA A41078)

759 P2d 279

Mildred J. Carmack, Portland, argued the cause for appellant. With her on the briefs were Daniel F. Knox and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent. With him on the brief were Daniel C. Dziuba and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This personal injury action was brought under the Jones Act, 46 USC § 688, by a seaman against the owner of the tug CHAMPION on which he was working at the time he was injured, alleging that defendant was negligent and that the CHAMPION was unseaworthy. The jury returned a verdict for plaintiff, finding both that defendant was negligent and that the CHAMPION was unseaworthy. Two of the 12 jurors dissented from the finding of negligence, and two different jurors disagreed with the finding of unseaworthiness. As explained below, the jury found that plaintiff was 49 percent responsible for his injuries and that he was damaged in the amount of $400,000. Defendant appeals, contending that the verdict should not have been received, because it was invalid, and that there was insufficient evidence of negligence and unseaworthiness to submit to the jury.

On March 28, 1983, plaintiff was working as a deckhand aboard the CHAMPION on the Columbia River. The only other person on board was the captain. At about 3 p.m., plaintiff and the captain brought the tug into a dock where they planned to pick up a "spill boom"[1] from the vessel PECOS. The captain maneuvered the vessel along side the PECOS with the spill boom floating between the two vessels. While the captain tried to keep the CHAMPION abreast the PECOS in the river's current, plaintiff attempted to retrieve the spill boom with a hook attached to a line. When the captain put the engine in gear, the CHAMPION suddenly hit the PECOS, crushing plaintiff's arm between the vessels. At the time when the vessels collided, the captain could not see plaintiff.

In a special verdict,[2] ten jurors found that the tug was unseaworthy, ten (but not the same ten) found that defendant

---

[1] A spill boom is a floating device that is used to prevent the spread of pollutants around a vessel.

[2] The individual juror's response to each question on the special verdict form is shown on the following diagram with an "X" indicating a dissenting vote:

| "JUROR NO. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| "Question No. 1 (unseaworthiness) | | | | | X | | X | | | | | |
| "Question No. 2 (defendant's negligence) | | X | | X | | | | | | | | |

was negligent and 12 found that plaintiff was negligent. The same ten jurors who found that the vessel was unseaworthy found that defendant was 51 percent at fault and that plaintiff was 49 percent at fault and nine of them agreed on damages. Defendant assigns error to the verdict, arguing both that it is invalid and that it violated the trial court's instructions.

It first argues that an insufficient number of jurors agreed on holding it liable for plaintiff's injuries. *Clark v. Strain et al,* 212 Or 357, 319 P2d 940 (1958), holds that, in a civil case, the same nine jurors must agree on every issue material to the decision in order to return a legal verdict. Or Const, Art VII (Amended); ORCP 59G(2). That is true for both special and general verdicts. *Munger v. S.I.A.C.,* 243 Or 419, 414 P2d 328 (1966). However, that rule applies only to cases in which the answers are interdependent, not where they are separate and independent. Here, ten jurors concluded that defendant was negligent, with jurors number 1 and number 4 dissenting. Ten jurors concluded that the CHAMPION was unseaworthy, with jurors number 5 and number 8 dissenting. Therefore, defendant contends, only eight of the 12 jurors agreed to hold it liable, whereas nine jurors are required to render a verdict in a civil action. Or Const, Art VII (Amended), § 5(7); *Clark v. Strain et al, supra.*

Defendant's argument assumes that negligence and unseaworthiness are interdependent concepts when, in fact, they are alternative theories of recovery. A seaman may bring an action for negligence under the Jones Act or for injuries caused by the unseaworthiness of a vessel. The relationship between a claim under the Jones Act and an unseaworthiness claim was discussed in *Brunner v. Maritime Overseas Corp.,* 779 F2d 296, 298-99 (5th Cir) *cert den* 476 US 1115 (1986), in

| "JUROR NO. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| "Question No. 3 (plaintiff's negligence) | | | | | (unanimous) | | | | | | | |
| "Question No. 4 (allocation of fault) | | | | | X | | X | | | | | |
| "Question No. 5 (damages) | X | | | | | | | X" | | | | |

which the plaintiff alleged injuries resulting from a fall due to an oil spill on the ship:

> "The history of the unseaworthiness claim shows that it developed independently of Jones Act negligence and has been treated as a separate cause of action ever since. The origin of the seaman's right to recover for injuries caused by an unseaworthy ship can be found in European and English law dated back to 1597. (Footnote omitted.)

> "* * * * *

> "In 1920, Congress passed the Jones Act. This act gave recovery to seamen for injuries sustained through the negligence of the shipowner. * * * The Supreme Court has steadfastly adhered to the principle that unseaworthiness is a completely separate concept from negligence. *See Usner v. Luckenbach Overseas Corp.*, 400 US 494, 91 S Ct 514, 27 L Ed 2d 562 (1971).

> "* * * * *

> "* * * In the present case, the jury was instructed that these were two separate theories of recovery. The jury could well have concluded that the shipowner was negligent for allowing oil on the deck of his ship, but that oil on the deck of the ship did not render the vessel unfit to go to sea. The jury has the power to determine what facts constitute unseaworthiness just as it has the power to decide if there was negligence."

■ Because negligence and seaworthiness are not interdependent, it matters not that the same nine jurors failed to find negligence and unseaworthiness. Nine of the same jurors who found unseaworthiness agreed on the allocation of fault and the amount of damages. It was on that basis that the verdict was received. The verdict is valid.

Defendant next argues that the verdict did not comply with the court's instructions, part of which stated:

> "At least nine jurors must agree upon the verdict returned into Court. Now, it's possible that you will answer as many as five questions on this verdict form. At least nine jurors would have to agree on every answer contained in the verdict. Okay? Nine jurors would have to be in total agreement on every answer that you've completed in this verdict form. There

could be 10 on one and 12 on another. But at least nine have to agree on every answer that's contained in the verdict form."

■ The instruction may be incorrect, because it may be understood to require the jury to find both that defendant was negligent and that the CHAMPION was unseaworthy in order to find defendant liable. Defendant argues that the instruction, to which plaintiff took no exception, became the law of the case, *see Fulton Ins. v. White Motor Corp.*, 261 Or 206, 223 n 5, 493 P2d 138 (1972), and that it required the *same* nine jurors to agree on every answer on the verdict form, which they failed to do. The instruction, however, does not impose the latter requirement. It requires that nine jurors agree on each answer to the five questions, not that the same nine jurors agree on each question. Although the instruction may be incorrect, it erred on the side of defendant and, therefore, it may not complain.

■ Defendant also argues that the verdict is flawed because the jury, after being instructed that nine jurors must agree on each question, allocated plaintiff's fault against a "combined" liability of defendant for both negligence and unseaworthiness. It contends that the finding of negligence may have caused the jury to allocate fault or award additional damages on the basis of negligence, rather than on the basis of unseaworthiness. The instruction, however, was clear that the allocation of fault could be based on either a finding of negligence or unseaworthiness.[3]

■ Defendant's remaining assignments of error concern the sufficiency of the evidence to submit the case to the jury. On each of those issues,[4] plaintiff presented testimony from

---

[3] The instruction provides:

"However, if you answer that question yes, in other words, *you found that the ship was unseaworthy or that the Defendant was negligent or both*, and you also found that the Plaintiff was negligent himself in some manner that contributed to his accident, then you have to compare the fault of one party with that of the other. And you do that by determining what part of the fault was the responsibility of the Plaintiff and what part was the responsibility of the Defendant." (Emphasis supplied.)

[4] Plaintiff alleged that the CHAMPION was unseaworthy, because it lacked a rudder angle indicator, a grappling hook and an adequate number of personnel aboard. Plaintiff alleged that defendant was negligent for not placing enough personnel on the vessel and because the captain failed to control it.

which the jury could determine that the CHAMPION was unseaworthy. Although the evidence was not strong, it was sufficient. We need not discuss the assignments of error relating to the sufficiency of the evidence of defendant's negligence, because the unseaworthiness finding is all that is necessary to support the verdict.

Affirmed.