O'CONNELL, APPELLANT, *v.* CHESAPEAKE & OHIO RAILROAD COMPANY, APPELLEE.

[Cite as O'Connell *v.* Chesapeake & Ohio RR. Co. (1991), 58 Ohio St. 3d 226.]

(No. 90-34—Submitted December 19, 1990—Decided April 3, 1991.)

228

*Spangenberg, Shibley, Traci & Lancione, Donald P. Traci* and *Dennis R. Lansdowne,* for appellant.

*McNeal, Schick, Archibald & Biro Co., L.P.A.,* and *Harley J. McNeal,* for appellee.

ALICE ROBIE RESNICK, J. We are confronted primarily with two issues of law in this appeal. The first is whether appellant has waived any challenge she might have relating to the jury's answers to the submitted in-

terrogatories by failing to make a timely objection. The second issue presented for our determination is whether the trial court properly entered judgment in favor of the railroad based on the jury's answers to the interrogatories.

## I

We begin our analysis by considering whether appellant, by failing to timely object, has waived any error in the alleged inconsistencies in the jury's answers to the interrogatories. Generally, the federal courts of appeals have held "that an objection to inconsistent answers is waived unless the party raises it before the jury is discharged. *Fernandez* v. *Chardon* (C.A. 1, 1982), 681 F. 2d 42, 58; *Skillin* v. *Kimball* (C.A. 1, 1981), 643 F. 2d 19, 19-20; *Tennessee Consolidated Coal Co.* v. *United Mine Workers of America* (C.A. 6, 1969), 416 F. 2d 1192. The purpose of the rule is to promote the efficiency of trials by permitting reconciliation of inconsistencies without the need for a new presentation of the evidence to a different trier." *Haehnlein* v. *Henry* (1987), 41 Ohio App. 3d 233, 234, 535 N.E. 2d 343, 344.

Appellant argues that when the jury interrogatories were returned, neither counsel nor the court had reason to suspect the inconsistencies that were later discovered. Appellant asserts that since the requisite number of signatures appeared under the answer to each interrogatory, no one had sufficient time to reflect or consider that the answers should be scrutinized for the type of anomaly that was subsequently detected. We are inclined to agree with appellant. At trial, the court read aloud both the interrogatories themselves and the jury's answers thereto, along with the number of signatures to each. For example, after reading each interrogatory and before going on to the next interrogatory, the trial judge would consistently state: "The answer to that is 'yes.' And that's signed by * * * [the stated number] of the jurors." Considering the atmosphere of a long, involved trial, and given that there was little chance of discovering the inconsistencies without a protracted examination and comparison of the interrogatory forms themselves, appellant cannot be said to have waived her challenges to the jury's answers.

More importantly, however, and as will be more fully discussed *infra*, we are of the opinion that the jury's inconsistent answers to the interrogatories are tantamount to plain error. We are acutely aware that "[i]mplementation of the plain-error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See *State* v. *Long* (1978), 53 Ohio St. 2d 91 [7 O.O.3d 178], paragraph three of the syllabus. The plain-error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant. *State* v. *Eiding* (1978), 57 Ohio App. 2d 111 [11 O.O. 3d 113]. Although the plain-error doctrine is a principle applied almost exclusively in criminal cases, this court has stated that the doctrine may also be applied to civil causes, even if the party seeking invocation of the doctrine failed to object to the jury instruction in question, if the error complained of 'would have a material adverse affect [*sic*] on the character and public confidence in judicial proceedings.' *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, 209 [24 O.O. 3d 316]. See, also, *Yungwirth* v. *McAvoy* (1972), 32 Ohio St. 2d 285, 288 [61 O.O.2d 504]."

(Footnote omitted.) *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220, 223, 18 OBR 281, 283-284, 480 N.E. 2d 802, 805. As in *Reichert, supra,* "we find that the instant case presents one of those extremely rare situations in which the plain-error doctrine must be invoked in order to prevent a manifest miscarriage of justice * * *[.]" *Id.* at 223, 18 OBR at 284, 480 N.E. 2d at 806. Likewise, we invoke this doctrine in order to ensure public confidence and reliability in the judicial proceedings. See *Schade, supra,* at 209, 24 O.O. 3d at 317, 436 N.E. 2d at 1003.

## II

We now turn to the main issue before this court, which is whether the trial court's rendering of judgment in favor of appellee is proper when considering the consistency of the jury's answers to the interrogatories. As noted above, the trial court and both counsel agreed that a general verdict would not be used, but rather the court would render a verdict based on the jury's answers to six interrogatories.[1] In the present case, the problem which arises stems from the inconsistent answers given by the jury regarding the initial determination of fault, and the subsequent apportionment of fault. As they are germane to a determination of this issue, we set forth the relevant interrogatories in full:

"1. What was the total amount of damages sustained by the plaintiff, CONSTANCE J. O'CONNELL, regardless of who caused it, exclusive of the amounts claimed by the United States government and St. Vincent Hospital?

"ANSWER: <u>$389,190.00</u> * * *

"* * * [This interrogatory was signed by seven of the eight jurors.]

"2. Do you find by a preponderance of the evidence that the defendant, CHESAPEAKE & OHIO RAILROAD, was negligent?

"ANSWER: YES * * *

"* * * [This interrogatory was signed by six jurors, but not Juror Bryson, or Juror Hall.]

"3. If your answer to Interrogatory No. 2 is 'yes', do you find that the defendant's negligence was a proximate cause of the plaintiff's damages?

"ANSWER: YES * * *

"* * * [This interrogatory was signed by six jurors, but not Juror Bryson, or Juror Hall.]

"4. Do you find by a preponderance of the evidence that the plaintiff, CONSTANCE J. O'CONNELL was negligent?

"ANSWER: YES * * *

"* * * [This interrogatory was signed by seven jurors, but not Juror Bryson.]

"5. If your answer to interrogatory No. 4 is yes, do you find that the negligence of the plaintiff, CONSTANCE J. O'CONNELL, was a proximate cause of her injuries?

"ANSWER: YES * * *

"* * * [This interrogatory was signed by seven jurors, but again, not Juror Bryson.]

"6. If you have found that the defendant and the plaintiff were each negligent and that the negligence of each was a proximate cause of the plaintiff's injuries, state in a percentage the amount of negligence of each compared to the total negligence involved.

---

[1] We note that Civ. R. 49(C) specifically prohibits this procedure, stating that "[s]pecial verdicts *shall not* be used." (Emphasis added.) However, we decline to reverse the court of appeals on this basis in order to reach the merits of the parties' arguments.

PLAINTIFF'S
NEGLIGENCE:        70%
DEFENDANT'S
NEGLIGENCE:        30%
TOTAL:            100%
 THE TOTAL MUST EQUAL
        100%. * * *"

The last interrogatory, which required the jurors to apportion fault, was signed by only six jurors — including jurors Bryson and Hall. Thus, juror Bryson took part in apportioning fault (seventy percent to plaintiff-appellant, thirty percent to the railroad), even though by her failure to sign interrogatory Nos. 2, 3, 4, and 5, she found neither of the parties causally negligent. Similarly, juror Hall participated in apportioning fault (thirty percent to the railroad), but again, by her failure to sign interrogatory Nos. 2 and 3, she found no causal negligence on the part of the railroad.[2]

Appellant argues that as a result of these inconsistencies, the participation in apportioning of fault by jurors Bryson and Hall was impermissible. Thus, appellant posits that only four of the eight jurors concurred in the percentages of fault that were attributed to each party. Likewise, appellant asserts that the answers to the interrogatories are plainly illogical, and so fatally inconsistent that they could not support a verdict for either party.

A

This court has never decided the issue presented in this case. Also, there is no statute in Ohio which controls our disposition of this case.

From the above instructions, and from reading the interrogatories themselves, it is clear that jurors Bryson and Hall did not follow the trial judge's instructions or the interrogatories. This is because interrogatory No. 6 states, "If you have found that the defendant and plaintiff were each negligent * * *." (Emphasis added.) Thus, we could reverse on this basis as well, but again decline to do so.

---

[2] With regard to how to answer the interrogatories, the trial court instructed the jury as follows:

"With respect to the first answer, this requires a concurrence of at least six. It could be six, seven or eight. But whoever concurs in it would sign. There's a provision for signing with respect to each of the questions here. Those who don't concur don't sign. If the forelady, or whoever it may be, foreperson doesn't agree with at least six of them, then she doesn't sign.

"The next question is, do you find by a preponderance of the evidence that the defendant, Chesapeake and Ohio, were [sic] negligent. Now this calls for a yes or no answer, based upon what we told you, based upon your finding as to the evidence in the case. The answer is either yes or no.

"It goes down here and says, you will circle whichever your answer is. If your answer is yes, obviously you circle yes. If you answer no, you circle no. Whoever concurs in this answer, once again they sign it. There's a provision for signing as to each of the questions being submitted to here.

"* * *

"Now it is your duty to consult with one another, deliberate with a view in reaching an agreement if you can do so without doing violence to your individual judgment. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the views which your fellow jurors may have to present, and you should not hesitate to change your opinion when convinced it is erroneous. However, you should not be influenced to vote in any way to a question submitted to you just to go along with the jurors.

"So when these papers are returned and your signature is on them, we'll understand that this is your own individual judgment that you have arrived at. The fact that you signed is obviously an indication that this is your intention in connection with this case."

However, the Ohio Constitution does provide that "[t]he right of trial by jury shall be inviolate, except that in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury." Section 5, Article I, Ohio Constitution. Furthermore, Civ. R. 48 provides that "[i]n all civil actions, a jury shall render a verdict upon the concurrence of three-fourths or more of their number." Thus, assuming as correct appellant's argument that jurors Bryson and Hall could not validly participate in the apportionment of fault, then the verdict rendered by the trial court is constitutionally infirm as the jury did not concur by a three-fourths majority as to the apportionment of negligence. Conversely, if jurors Bryson and Hall are not prohibited from taking part in apportioning fault, then the trial court's judgment may stand as six of the eight jurors (or three-fourths) concurred in the decision. Given the paucity of case law in Ohio on this issue, we naturally turn to decisions from courts in other jurisdictions for guidance.

### B

An examination of decisional law from other jurisdictions reveals two distinct lines of cases, each propounding a different rule of law. The first series of cases adheres to what may accurately be described as the "same juror" rule. See *Fleischhacker* v. *State Farm Mut. Auto. Ins.* (1956), 274 Wis. 215, 79 N.W. 2d 817; *Ferguson* v. *Northern States Power Co.* (1976), 307 Minn. 26, 239 N.W. 2d 190; *Garcia* v. *Brulotte* (1980), 94 Wash. 2d 794, 620 P. 2d 99; *Cohen* v. *Levin* (Sup. Ct. 1981), 110 Misc. 2d 464, 442 N.Y. Supp. 2d 851; *McCauley* v. *Charter Oak Fire Ins. Co.* (Tex. App. 1983), 660 S.W. 2d 863.[3]

The second line of cases subscribes to what has been called the "any majority" rule. See *Ward* v. *Weekes* (1969), 107 N.J. Super. 351, 258 A. 2d 379; *Naumberg* v. *Wagner* (App. 1970), 81 N.M. 242, 465 P. 2d 521; *Tillman* v. *Thomas* (1978), 99 Idaho 569, 585 P. 2d 1280; *Juarez* v. *Super. Ct. of Los Angeles* (1982), 31 Cal. 3d 759, 183 Cal. Rptr. 852, 647 P. 2d 128; *Williams* v. *James* (1989), 113 N.J. 619, 552 A. 2d 153. An examination of these two competing rules of law, and the underlying rationale for each, is instructive regarding the issues before this court.

### The "Same Juror" Rule

An early decision supporting the "same juror" rule is *Fleischhacker, supra*. While interpreting statutory law, the Wisconsin Supreme Court held that it was necessary for the same jurors to agree on all issues or the resultant verdict is invalid. Quoting an earlier Wisconsin case, the court stated that in comparative negligence cases, " 'it is necessary for at least the same 10 jurors to agree on every question that it is necessary for them to consider in answering the question of comparative negligence. * * * [T]he same 10 jurors must agree as to the items of causal negligence found and the comparative effect of the causal

---

[3] Some courts have employed the "same juror" rule under circumstances other than those presented by the instant case. See *Clark* v. *Strain* (1958), 212 Ore. 357, 319 P. 2d 940; *Schultz* v. *Monterey* (1962), 232 Ore. 421, 375 P. 2d 829; *Klanseck* v. *Anderson Sales & Service, Inc.* (1984), 136 Mich. App. 75, 356 N.W. 2d 275.

In these cases, the courts applied the same juror rule in the context of the jury's determinations as to liability and damages. While we do not extend our holding to reach that type of situation, these cases do exemplify the courts' adherence to the same juror rule.

negligence of the parties in producing the resulting damages.' " *Id.* at 218, 79 N.W. 2d at 819. Thus, the court went on to conclude that "jurors who dissent from a finding of negligence or its causality which is material to a comparison of negligence are disqualified from answering the question of comparative negligence." *Id.* at 220, 79 N.W. 2d at 820.

In *Ferguson, supra,* the court was confronted with the same scenario presented to us in this case. Therein, two jurors who dissented from finding the defendant causally negligent nevertheless participated in the apportionment of comparative negligence. The court in *Ferguson* noted that while *Fleischhacker, supra,* relied on a Wisconsin statute, the absence of a similar statute did not mandate a different rule from that espoused in *Fleischhacker.* The *Ferguson* court reasoned as follows: "The questions regarding the causal negligence of the parties and the apportionment of that causal negligence are not independent of one another, but are integrally related in determining ultimate liability. To illustrate, the question of apportionment is never reached, in the ordinary case, until one plaintiff and one defendant are found to be causally negligent. And when reached, its function is to give further definition to causal negligence for purposes of imposing liability. It is unlike the damages question, which can be, and is, answered independently of liability." *Id.* at 37, 239 N.W. 2d at 196. The court went on to hold that the jury should be instructed "that those jurors who dissent from a finding of causal negligence on the part of one or more of the parties are disqualified from participating in the apportionment of causal negligence." *Id.* at 37, 239 N.W. 2d at 196.

Likewise, in *Cohen, supra,* the court held that a jury verdict was invalid where one juror had previously dissented from imposing liability as to a defendant, but then voted to apportion some negligence to that same defendant. The court reasoned that such an inconsistency could not be reconciled since "[a]n apportionment requires a refinement of the jurors' earlier votes on the liability of the defendant. It fixes not merely the existence or lack of liability, but the degree of liability." *Id.* at 468, 442 N.Y. Supp. 2d at 854. Relying on Oregon case law, the court in *Veberes v. Knappton Corp.* (1988), 92 Ore. App. 378, 759 P. 2d 279, held that "in a civil case, the same nine jurors must agree on every issue material to the decision in order to return a legal verdict. * * * That is true for both special and general verdicts. * * * [Citations omitted.] However, that rule applies only to cases in which the answers are interdependent, not where they are separate and independent." *Id.* at 381, 759 P. 2d at 280.

Thus, the major principle behind the "same juror" rule is that the determination as to whether a party is causally negligent is not independent from, but is indeed inseparable from, the apportionment of negligence. Stated otherwise, a juror's finding as to whether liability exists is so conceptually and logically connected with apportioning fault that inconsistent answers to the two questions render that juror's vote unreliable and thus invalid.

### The "Any Majority" Rule

*Juarez, supra,* is one of the leading cases adhering to this tenet of law. Therein, the court held that in a case involving the principles of comparative negligence, and where the votes of only nine jurors were necessary to reach a verdict, jurors who had

disagreed with the majority on the issue of negligence could nevertheless provide votes necessary to decide the issue as to the apportionment of damages between the parties. In so holding, the court rejected an argument that a vote against fixing liability on a party is inconsistent with a subsequent vote apportioning liability to that same party. The *Juarez* court stated as follows: "[O]nce three-fourths of the jurors have found a party negligent, we see no reason why dissenting jurors cannot accept the majority's finding of such negligence and participate in apportioning liability in accordance with that premise." *Id.* at 768, 183 Cal. Rptr. at 857, 647 P. 2d at 133.

Thus, the *Juarez* court went on to adopt the "any majority" rule: "[W]e hold that if nine identical jurors agree that a party is negligent and that such negligence is the proximate cause of the other party's injuries, special verdicts apportioning damages are valid so long as they command the votes of *any* nine jurors." *Id.* Notably, the court went on to offer two additional reasons for its holding: "To hold otherwise would be to prohibit jurors who dissent on the question of a party's liability from participation in the important remaining issue of allocating responsibility among the parties, a result that would deny all parties the right to a jury of 12 persons deliberating on all issues. * * * [A] contrary rule would result in 'time consuming writs, mistrials, frustrating delays and confusion for the trial judge and jury — all adding to the heavy burden of the California civil trial process.' " *Id.*

The rationale suggested by the court in *Juarez* is prevalent in the decisions from the other courts that adhere to the "any majority" rule. For example, in *Williams, supra,* the court

placed particular importance on the notion that jurors who dissent from attributing negligence to a party may still be able to apportion fault to that party. "The question in all of these situations is whether the jurors are capable of engaging in such deliberations conscientiously, fairly, and openly. Although it may be difficult for jurors who did not find a party at fault to then conscientiously and fairly apportion a percentage of fault, we see this mental task as no greater than or different from that expected of jurors in many other settings. We presume that each juror will be conscientious and fair in deliberating on the apportionment of fault whether he or she agreed with the prior verdict on liability or not." *Id.* at 632, 552 A. 2d at 160.

Likewise, the court in *Schabe* v. *Hampton Bays Union Free School Dist.* (1984), 103 App. Div. 2d 418, 480 N.Y. Supp. 2d 328, relied heavily on the concept that all members of a jury partake in the disposition of a case. "Under the * * * [same juror rule], the casting of a dissenting vote on any question reduces the dissenter's influence to a state of practical impotence and creates a mandate for continued unanimity among the other jurors on the remaining questions if the verdict is to survive. The dissenter is bereft of real voting power, for his vote on the remaining questions can no longer affect the verdict." *Id.* at 424, 480 N.Y. Supp. 2d at 333.

Lastly, perhaps the most common reason cited by the courts adhering to the "any majority" rule is judicial economy. "A requirement that individual jurors vote consistently would sharply minimize the usefulness of special verdicts * * * by increasing the number of mistrials and retrials." *Id.* at 426, 480 N.Y. Supp. 2d at 334. Likewise, the court in *Naumberg, supra,* stated that the "any majority"

rule "ensures less waste of judicial time." *Id.* at 245, 465 P. 2d at 524. See, also, *Ward, supra,* at 356, 258 A. 2d at 381; *Tillman, supra,* at 572, 585 P. 2d at 1283.

### C

After carefully examining the two divergent positions presented above, we find that the more rational and analytically sound rule is the "same juror" rule. Our decision is based on a number of reasons. First and foremost, we believe the determination of causal negligence on the part of one party to be a precondition to apportioning comparative fault to that party. It is illogical to require, or even allow, a juror to initially find a defendant has not acted causally negligently, and then subsequently permit this juror to assign some degree of fault to that same defendant. Likewise, where a juror finds that a plaintiff has not acted in a causally negligent manner, it is incomprehensible to then suggest that this juror may apportion some degree of fault to the plaintiff and thereby diminish or destroy the injured party's recovery.

Moreover, we are not persuaded by the rationale suggested by the courts in *Juarez* and *Williams, supra.* As the dissent in *Juarez* points out: "* * * [A]s a practical matter, it does not seem * * * realistic to assume that a juror who concludes that a party is not culpable would be able conscientiously to apportion financial responsibility to that party. His perception of a legal compulsion upon him to affix *some* responsibility upon a party [who] he concludes is *not* responsible *at all* is more likely to cause that juror to assign to such a party an arbitrary proportion of the total liability. The introduction of such arbitrary or speculative element into the deliberative process can only tend to render the ultimate apportionment unreliable. * * * In my view, the requirement of consistency in a juror's votes in the present context is supportive of the entire deliberative process, encouraging reason instead of speculation in the rendering of mutually interdependent special verdicts upon which the ultimate judgment is to be entered." *Id.* at 772, 183 Cal. Rptr. at 860, 647 P. 2d at 136. See, also, *Williams, supra* (Clifford, J., dissenting): "The Court sanctions * * * [the 'any majority' rule], calmly reassuring us that the mental gyrations called for in that task are 'no greater than or different from that expected of jurors in many other settings * * *.' But on the issue presented here — the liability/apportionment question — I would side with those courts * * * that have disapproved of the irreconcilable inconsistency explicit in a juror's addressing apportionment after having conscientiously concluded that there is nothing to apportion." *Id.* at 634-635, 552 A. 2d at 161.

Similarly, we are not persuaded by the argument that the same juror rule would deny all parties the right to have a full jury deliberate on all issues. In a comparative negligence case, the initial, and somewhat talismanic question, is whether the defendant is causally negligent for the injury to the plaintiff. See *Ferguson, supra,* at 37, 239 N.W. 2d at 196. The obvious corollary to this is whether the plaintiff was negligent in causing his or her own injury. The full assembly of jurors participates in these determinations and, thereafter, those jurors who find a party to be causally negligent then refine this determination by apportioning fault to the respective parties. Because the full jury undertakes the initial determination as to negligence and proximate cause, neither party is deprived of having all the jurors

deliberate the material issue of negligence and proximate cause. We do not, however, wish to minimize the apportionment of fault. This aspect of comparative negligence retains its importance in all these cases. Yet, it cannot be denied that the allocation of fault is a method through which a juror clarifies his or her finding that a party is causally negligent for the injury sustained. As such, the allocation of fault *flows from* the adjudication of negligence and proximate cause.

Lastly, we address the proposition that the "same juror" rule would lead to an increase in mistrials and retrials, and thus have a detrimental effect on judicial economy. Initially, we believe it is pure speculation and conjecture that the number of mistrials and hung juries would increase to a point where the "same juror" rule would substantially retard an already congested system. We view the assertion that it may produce such a phenomenon as doing nothing more than substituting efficiency over substantive justice.[4]

Similarly, we believe that even *if* there is a small increase in court time used, it is not significant enough to justify adopting the "any majority" rule. Thus, we decline to follow those jurisdictions adhering to that doctrine simply because it may be more expedient.

### D

We hold that in a case tried under comparative negligence principles, three-fourths of the jury must agree as to both negligence and proximate cause, and only those jurors who so find may participate in the apportionment of comparative negligence. In the present case, juror Bryson did not find either the appellant or the railroad causally negligent in producing the injury to appellant. Thus, she is disqualified from apportioning fault to either party. Juror Hall did not find the railroad causally negligent, and thus she may not take part in apportioning fault to that party. Their participation in the apportionment of negligence

---

[4] For example, consider the scenario where six of eight jurors find a defendant to be causally negligent, and thereafter only six jurors apportion ninety percent fault to the defendant — but the two jurors who *did not* find the defendant causally negligent take part in this allocation. The result is that only four of the eight jurors found the defendant both causally negligent *and* ninety percent at fault. Thus, such a defendant would be required to pay a substantial proportion of damages, while only four of the jurors who allocated fault (half of the jury) agreed with the ultimate judgment, rather than three-fourths of the jury. Similarly, an equally possible converse of this hypothetical could deny a deserving plaintiff any recovery whatsoever. Consider a case where all eight jurors find a defendant to have proximately caused the plaintiff's injury, six of eight jurors also find the plaintiff causally negligent, and six jurors — in-

cluding those two who did not find the plaintiff negligent — find the plaintiff fifty-one percent at fault. In such a case an Ohio plaintiff would be stripped of any recovery because her negligence was greater than fifty percent, even though only four jurors found *both* that her negligence was the proximate cause of her injury *and* that she was fifty-one percent at fault.

Such inconsistent results should not be tolerated in the name of expediency, for to do so would affect the very foundations of civil justice. The court system must maintain the confidence and respect of the public. To allow such inconsistent determinations to stand leads only to a lack of credibility in the system. The general public must be able to have faith in their ability to seek redress in the courts, and that faith should not be sacrificed because a particular rule creates a lesser burden on an already congested system.

resulted in a verdict which is wholly unreliable.

Only *six jurors* found the appellant seventy-percent negligent in causing her own injuries and the railroad thirty-percent negligent in causing appellant's injury. Because jurors Bryson and Hall should have been disqualified from taking part in the apportionment question, their votes as to apportioning fault are invalid. As such, fewer than three-fourths of the eight jurors agreed to the apportionment of fault. The Ohio Constitution requires the concurrence of three-fourths of the jury for a valid verdict. Therefore, the trial court erred in entering judgment for the railroad because such a verdict violates the constitutional requirement.

Based on the foregoing, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed
and cause remanded.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. I must dissent from the majority upon a number of important bases. First, I am in agreement with the dissenting position of Justice Wright to the effect that it does a great disservice to our legal system to apply the "plain error" doctrine to this case. This doctrine is but seldom utilized in other than criminal considerations. In application of the doctrine to a civil case, there must be found a significant miscarriage of justice. Such are not the facts here.

Second, all counsel agreed that there would be no general verdict, and that the matter would be determined by the jury upon its answers to certain interrogatories. The interrogatories were answered by three-fourths of the jury and the apportionment of negligence between the plaintiff and the defendant was contained within the answers to such interrogatories. No objections were entered by counsel, and the jury was thence discharged. It was only after the discharge of the jury that plaintiff's counsel did object. I dissent upon this basis in that the certainty and finality of verdicts should be given greater credence than is rendered by this reversal.

Equally, if not more important, I dissent upon the basis that there is little merit added to our judicial process in the adoption by a majority of this court of the "same juror" rule for jury verdicts in these types of comparative negligence cases. It is my honestly considered opinion that a far better rule for the more effective operation of the function of juries and judicial economy in these types of cases would be the adoption of the "any majority" rule. The California Supreme Court, in *Juarez* v. *Superior Ct. of Los Angeles* (1982), 31 Cal. 3d 759, 183 Cal. Rptr. 852, 647 P. 2d 128, expresses the sounder rule, and succinctly states one of the basic reasons for the adoption of such a rule, as follows: "* * * [O]nce three-fourths of the jurors have found a party negligent, we see no reason why dissenting jurors cannot accept the majority's finding of such negligence and participate in apportioning liability in accordance with that premise." *Id.* at 768, 183 Cal. Rptr. at 857, 647 P. 2d at 133.

The final consideration of this reviewing court should be the evidence that was before the jury in this matter. A review of this evidence would show that the testimony and exhibits admitted by the trial court clearly supported

the finding of the jury. Specifically, the negligence of the plaintiff in driving her automobile after some drinking in the afternoon and evening at the officers' club, and approaching the railroad crossing and failing to see the railroad car across the roadway, which car was reasonably discernible, constituted negligence on the part of the plaintiff which proximately occasioned her injuries, all by the greater weight of such testimony and evidence.

The judgment of the court of appeals should be affirmed.

MOYER, C.J., concurs in the foregoing dissenting opinion.

WRIGHT, J., dissenting. I have no quarrel with the destination reached by the majority. My objection is getting there via the "plain error" doctrine. The majority asserts that it is "acutely aware" of the need to use this doctrine only " 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " I confess I cannot locate either the circumstances or the miscarriage that warrants upsetting the verdict of the jury.

The circumstances alleged are that, at the conclusion of a "long, involved trial," discovering the inconsistencies in the verdict forms was nigh unto impossible absent "protracted examination." Given the significance of those forms, I would have thought that plaintiff's counsel would have been at least mildly curious about examining them. The majority's contention notwithstanding, I would maintain that even a cursory glance at the verdict forms shows that the same jurors did not vote the same way on each issue. I will admit that it takes some additional time to sort out just who voted for what. But, after eight days of trial, what is a few more minutes, or even an hour? The record indicates that when the jury returned with its verdict, the trial judge retired to his chambers for a conference with counsel for both sides. Obviously, there was ample opportunity during this sojourn for plaintiff's counsel to examine the jury interrogatories. But, when the parties returned to open court, and with the interrogatories read into the record, there was no protest from the plaintiff. Failure to object constitutes a waiver. The fact that it would have taken some alertness to catch the problem does not, in my mind, rise to the level of an "exceptional circumstance" warranting a finding of plain error.

As to the issue of a "miscarriage of justice," I can only point to the fact that seven of the jurors found the plaintiff negligent. I do not wish to sound harsh given the nature and extent of the plaintiff's injuries, but someone who runs into a railroad car at a crossing where the view is unobstructed and the warnings ample and loses a jury verdict does not strike me as the victim of a miscarriage of justice.

The arguments in favor of the certainty and finality of verdicts far outweigh other considerations in a case such as this one. I can appreciate the court's desire to deal with the merits of the "same juror" rule versus the "any majority" rule. However, as with so many other cases appealed to this court, I would defer resolution of that issue until a more suitable set of facts arrives.

Therefore, I respectfully dissent from the finding that the jury's verdict constitutes "plain error."

MOYER, C.J., concurs in the foregoing dissenting opinion.