[Cite as *Russo v. Gissinger*, 2023-Ohio-200.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss: | NINTH JUDICIAL DISTRICT |
| | ) | |

| DANIEL RUSSO | C.A. No. 29881 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANETTE J. GISSINGER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CV-2017-0803458 |

DECISION AND JOURNAL ENTRY

Dated: January 25, 2023

TEODOSIO, Presiding Judge.

**{¶1}** Danette J. Gissinger appeals the judgment of the Summit County Court of Common Pleas. We affirm.

I.

**{¶2}** This case arises out of an automobile accident that occurred in 2014, involving a collision between Danette J. Gissinger and Daniel Russo, whereupon Mr. Russo sustained injuries. Mr. Russo initially filed his complaint against Ms. Gissinger in 2016, which was voluntarily dismissed. Mr. Russo refiled the complaint in 2017, and the case proceeded to trial in 2020, with liability being disputed.

**{¶3}** The jury began deliberations on January 24, 2020, and late in the day informed the court that they had completed the jury interrogatories and verdict forms. Upon review, the trial court discovered that the jury had not followed the instructions with regard to the interrogatories, which stated that only those jurors who answered "yes" to Interrogatory A were qualified to answer

Interrogatory B. The jury's answers were improper because two jurors who had not answered "yes" to Interrogatory A answered Interrogatory B. Without reading a verdict, the trial court instructed the jurors to continue their deliberations and reassess the interrogatories because the instructions had not been followed.

{¶4} The jury continued their deliberations on January 27, 2020, and again the trial court was informed that the jury had completed the interrogatories and reached a verdict. The jury determined that both Ms. Gissinger and Mr. Russo were negligent and that their negligence was a proximate cause of Mr. Russo's injuries. The jurors apportioned 51% of negligence to Ms. Gissinger and 49% to Mr. Russo and determined total damages to be $565, 000.00. Accordingly, the verdict form for Mr. Russo was signed by the jury.

{¶5} Ms. Gissinger moved for a mistrial, arguing that the trial had been irregular due to the jury changing how they had answered the interrogatories: on January 24 they had answered "no" to Interrogatory B finding that Ms. Gissinger's negligence had been a proximate cause of injury; on January 27, they answered "yes." Consequently, what would have been a defense verdict on January 24 was instead a plaintiff's verdict with a finding of comparative negligence. The trial court denied the motion for a mistrial, and in February 2020, Ms. Gissinger filed a motion for judgment notwithstanding the verdict or in lieu of verdict, followed by an amended version of the same motion. The trial court denied the motion on May 13, 2020. Ms. Gissinger now appeals.

{¶6} We note that Ms. Gissinger's statement of assignments of error at the outset of her brief to this Court consists of eight items, however only four assignments of error are stated and argued within the body of the brief. Accordingly, we will base our analysis on the four assignments separately argued in the brief. *See* App.R. 12(A)(2) ("The court may disregard an assignment of

error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A).").

## II.

### ASSIGNMENT OF ERROR ONE

THE COURT VIOLATED DANETTE GISSINGER'S RIGHT TO A JURY TRIAL FOUND IN THE OHIO CONSTITUTION BY ACCEPTING THE JURY VERDICT WHICH CONSISTED OF LESS THAN THREE-FOURTHS CONCURRENCE OF THE JURORS.

{¶7} In her first assignment of error, Ms. Gissinger argues the trial court erred by accepting a jury verdict that consisted of less than three-fourths concurrence of the jurors.

{¶8} Article 1, Section 5 of the Ohio Constitution and Civ.R. 48 require a jury verdict to be based on the concurrence of not less than three-fourths of the jury. "The essential purpose [of] * * * interrogatories is to test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues * * * in the context of evidence presented at trial." *Cincinnati Riverfront Coliseum Inc. v. McNulty Co.*, 28 Ohio St.3d 333, 336–337 (1986). Ms. Gissinger contends: "There is no question only five of the eight jurors agreed to the issues of negligence and proximate cause on the interrogatories and signed the general verdict form for the Plaintiff of January 27, 2020. Only four of the jurors who consented to the apportionment of liability consented to the General Verdict."

{¶9} As to the first component of Ms. Gissinger's contention, the same seven jurors signed Interrogatories A and B finding Ms. Gissinger negligent and finding that her negligence was a proximate cause of Mr. Russo's injuries. Six jurors in total signed the verdict form for the Plaintiff, with five of the six being the same jurors who had signed Interrogatories A and B. Six jurors in total signed Interrogatory E, which apportioned negligence between the Defendant and

the Plaintiff, with all six having been jurors who signed Interrogatories A and B, and four of the six being the same jurors who signed the verdict form for Plaintiff.

{¶10} Although three-fourths of the eight-member jury signed Interrogatories A, B, E, as well as the verdict form for Plaintiff, Ms. Gissinger takes issue with the fact only five of the six jurors who signed the verdict form in favor of Plaintiff had signed both Interrogatories A and B. Ms. Gissinger argues that this constitutes plain error because the interrogatories were inconsistent with the general verdict form and that a new trial should be granted. In support of her theory, Ms. Gissinger points us to *O'Connell v. Chesapeake & Ohio RR. Co.*, 58 Ohio St.3d 226 (1991).

{¶11} This Court has previously engaged in an analysis of *O'Connell* in *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 182 Ohio App.3d 768, 2009-Ohio-2460 (9th Dist.):

> In *O'Connell v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 236, 569 N.E.2d 889, the Ohio Supreme Court adopted the "same-juror rule" in comparative-negligence cases so that only those jurors who find liability (i.e., breach of duty and proximate cause) may participate in the decision apportioning liability among the parties. The court in *O'Connell* examined the law of other jurisdictions, describing two distinct lines of cases. The court cited several states that followed the same-juror rule because "a juror's finding as to whether liability exists is so conceptually and logically connected with apportioning fault that inconsistent answers to the two questions render that juror's vote unreliable and thus invalid." *Id.* at 233, 569 N.E.2d 889. Therefore, the courts held, only jurors who agreed with the majority regarding liability could participate in the apportioning of that liability in a comparative negligence case. *Id.* The court also cited several states that followed the "any-majority rule." *Id.* at 233, 569 N.E.2d 889. Under this rule, there is no requirement of individual juror consistency in voting. *Id.* at 233–235, 569 N.E.2d 889. Therefore, once three-fourths of the jury has found a party liable, dissenting jurors may "'accept the majority's finding * * * and participate in apportioning liability.'" *Id.* at 234, 569 N.E.2d 889, quoting *Juarez v. Superior Court of Los Angeles* (1982), 31 Cal.3d 759, 768, 183 Cal.Rptr. 852, 647 P.2d 128.
>
> The Ohio Supreme Court held that in comparative-negligence cases, the same-juror rule applies to require individual voting consistency between interrogatory responses finding liability and apportioning it. *O'Connell*, 58 Ohio St.3d at 236, 569 N.E.2d 889. The court explained that it would be "illogical to require, or even allow, a juror to initially find a defendant has not acted causally negligently, and

then subsequently permit this juror to assign some degree of fault to that same defendant." *Id.* at 235, 569 N.E.2d 889. The court described "the allocation of fault" as a "method through which a juror clarifies his or her finding that a party is causally negligent for the injury sustained." *Id.* at 236, 569 N.E.2d 889. On that basis, the court in *O'Connell* held the verdict for the defendant invalid because less than the requisite three-fourths of the jury had agreed that the plaintiff was more than 50 percent liable for her own injuries. *Id.* at 237, 569 N.E.2d 889.

The Ohio Supreme Court did not adopt a strict application of the same-juror rule in all cases. In fact, the court pointed out in *O'Connell* that it was not willing to "extend [its] holding to reach" the application of the rule to "[a] jury's determinations as to liability and damages," as other jurisdictions had done. *Id.* at 232, 569 N.E.2d 889, fn. 3. The court emphasized that the same-juror rule "'applies only to cases in which the answers are interdependent, not where they are separate and independent'" like those of liability and damages. *Id.* at 233, 569 N.E.2d 889, quoting *Veberes v. Knappton Corp.* (1988), 92 Or.App. 378, 759 P.2d 279, 280. A juror could logically find that the defendant was not liable, but agree that the plaintiff's damages total a certain amount. It is, however, illogical for a juror to find the defendant was not liable, yet sign a general verdict finding against him and awarding damages to the plaintiff. That is what happened in this case.

One juror who had not agreed that Netzley had deviated from the standard of care or proximately caused Mrs. Segedy's death signed the verdict form awarding damages to Mr. Segedy. That juror's interrogatory responses were inconsistent and irreconcilable with the general-verdict form. The vote of that juror on the verdict form was invalid, rendering the verdict invalid because without her vote, the verdict remained supported by just five jurors.

*Id.* at ¶ 31-34.

{¶12} The reasoning in our application of *O'Connell* in *Segedy* is applicable to the case sub judice: one juror who had not agreed that Ms. Gissinger was both negligent and proximately caused injury signed the verdict form in favor of Mr. Russo. As in *Segedy*, that juror's interrogatory responses were inconsistent with the verdict form. This inconsistency, however, does not end our analysis.

{¶13} "In Ohio, an objection to inconsistent answers to jury interrogatories is waived unless an objection is raised prior to the jury's discharge." *Gamble v. Summit Cty. Dept. of Jobs*, 9th Dist. Summit No. 21450, 2004-Ohio-193, ¶ 5, citing *Cooper v. Metal Sales Mfg. Corp.*, 104

Ohio App.3d 34, 42 (11th Dist.1995); *see also Haehnlein v. Henry*, 41 Ohio App.3d 233, 234 (9th Dist.1987). "This not only promotes the efficiency of trials, by permitting an opportunity for the inconsistencies to be reconciled without the need for another trial before a new trier of fact, but also prevents jury shopping by those who wait to object to an alleged inconsistency until after the jury is discharged." *Gamble* at ¶ 5, citing *Greynolds v. Kurman*, 91 Ohio App.3d 389, 395 (9th Dist.1993).

{¶14} Counsel for Ms. Gissinger was given the opportunity to review the completed interrogatories and verdict forms on January 27, 2020. Because the jury's answers differed from its answers given on January 24, 2020, counsel made a motion for a mistrial based upon those changes. Counsel did not, however, raise any objections or note any inconsistencies between the interrogatories of January 27, 2020, and verdict form of January 27, 2020. Because Ms. Gissinger never objected or raised any argument regarding inconsistencies between the interrogatories of January 27, 2020, and verdict form of January 27, 2020, at the trial court level, she has forfeited all but plain error on appeal. *See Lynch v. Greenwald*, 9th Dist. Summit No. 26083, 2012-Ohio-2479, ¶ 10.

{¶15} The Supreme Court of Ohio has construed the concept of plain error with regard to civil cases as follows:

> The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). "[T]he doctrine is sharply limited to the *extremely rare* case involving *exceptional* circumstances where the error, left unobjected to at the

trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." (Emphasis sic.) *Id.* at 122. "The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." *Id.* The Supreme Court concluded:

> We therefore hold that in appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Id.* at 122-123.

**{¶16}** We cannot say that the error in question constitutes the exceptional circumstances required for a finding of plain error, nor do we find that the error challenges the legitimacy of the underlying judicial process. Neither the interrogatory instructions nor the verdict forms indicated that only those jurors answering "yes" to both Interrogatory A and B were qualified to sign the verdict form for the Plaintiff. We note that any ambiguity in the interrogatory instructions that led to the error could have been discovered and addressed by the parties before any error was committed. Ms. Gissinger was given the opportunity to review the interrogatories and verdict forms prior to the trial court reading them into the record. At that juncture, any potential problems could have been identified, however no objections to the interrogatories and verdict forms were made. Ms. Gissinger again had the opportunity to review the interrogatories and verdict forms after the jury returned a verdict, providing yet another opportunity for any error to be addressed before the jury was dismissed. As noted above, the plain error doctrine should never be applied to allow for litigation of issues which could easily have been raised and determined in the initial trial. *Goldfuss* at 122. Despite the fact that an error occurred in the signing of the interrogatories and

verdict form, at least three-quarters of the jurors signed each interrogatory and the verdict form. To that extent, the interrogatories are consistent with the verdict despite the error.

{¶17} We are cognizant of the fact that in *O'Connell*, the Supreme Court of Ohio determined that the error made with the jury interrogatories constituted plain error, but we find the case distinguishable from the case sub judice. The holding of *O'Connell* is clearly stated: "We hold that in a case tried under comparative negligence principles, three-fourths of the jury must agree as to both negligence and proximate cause, and only those jurors who so find may participate in the apportionment of comparative negligence." *O'Connell* at 236. Thus, a juror in *O'Connell* who did not make a finding of negligence was disqualified from apportioning fault. *Id.* In the case sub judice, six jurors in total signed Interrogatory E, which apportioned negligence between the Defendant and the Plaintiff, with all six having been jurors who signed Interrogatories A and B finding negligence and proximate cause, respectively. The holding of *O'Connell* is therefore not directly implicated in the case currently under our review.

{¶18} Ms. Gissinger's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE COURT ERRED IN NOT ACCEPTING THE VERDICT OF JANUARY 24, 2020, AND PROVIDED ERRONEOUS INSTRUCTIONS TO THE JURY WHEN SHE SENT THEM BACK FOR FURTHER DELIBERATIONS.

{¶19} In her second assignment of error, Ms. Gissinger argues the trial court erred when it did not accept the verdict of January 24, 2020, and provided erroneous instructions to the jury when they were sent back for further deliberation. We do not agree.

{¶20} Errors that arise during the course of the proceedings and are not brought to the attention of the trial court by objection, or otherwise, at the time they could be remedied, are forfeited. *Lefort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 123 (1987). The "failure

to timely advise a trial court of possible error, by objection or otherwise, results in a [forfeiture] of the issue for purposes of appeal." *Goldfuss* at 121. A party seeking to challenge the form of an interrogatory must do so before it is presented to the jury. *Boewe v. Ford Motor Co.*, 94 Ohio App.3d 270, 278-279 (8th Dist.1992).

**{¶21}** Under Civ.R. 49(B), if there is an inconsistency between the general verdict and one or more interrogatory answers, then the trial court "may" do one of three things: (1) enter judgment in accordance with the interrogatory answers, notwithstanding the general verdict, (2) return the jury for further consideration of the interrogatories and the general verdict, or (3) order a new trial. When an interrogatory response is inconsistent and irreconcilable with the general verdict, the Ohio Supreme Court has held that "the clear, best choice [is] to send the jury back for further deliberations." *Shaffer v. Maier*, 68 Ohio St.3d 416, 421 (1994).

**{¶22}** The instructions to the jury interrogatories required that only those jurors finding the Defendant negligent under Interrogatory A were qualified to answer Interrogatory B regarding proximate cause. When the jurors presented their interrogatories to the trial court on January 24, 2020, a juror improperly answered and signed Interrogatory B without having answered and signed Interrogatory A. After discovering this inconsistency, the trial court properly sent the jurors back for further deliberation.

**{¶23}** As noted above, Ms. Gissinger was given the opportunity to review the jury instructions, interrogatories, and verdict forms prior to their being read to the jury. No objections were made at that time. Likewise, no objections were made to the trial court's decision to send the jury back for further deliberation on January 24, 2020, after it was determined that the interrogatory instructions had not been followed and that Interrogatory A and B were inconsistent

with each other. We therefore conclude that Ms. Gissinger has forfeited the arguments raised under this assignment of error.

{¶24} We note that although Ms. Gissinger states that the trial court committed "plain error," she develops no argument suggesting the basic fairness, integrity, or public reputation of the judicial process were compromised. *See Goldfuss* at 122-123. Moreover, this Court finds no such exceptional circumstances in this case.

{¶25} The second assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

THE REPEATED IMPROPER LEGAL LIABILITY ASSERTIONS IN FRONT OF THE JURY BY PLAINTIFF'S COUNSEL WERE SO PERVASIVE THAT IT DENIED GISSINGER A FAIR TRIAL.

{¶26} In her third assignment of error, Ms. Gissinger argues that opposing counsel's repeated use of legal liability assertions in front of the jury denied her of a fair trial.

{¶27} Ms. Gissinger alleges that opposing counsel made improper statements of legal liability during voir dire and asked for improper interpretations and conclusions of law in examining a witness who was a police officer. She cites to no law in support of these contentions and fails to assign any actual error to the trial court, except to suggest that the trial court "should have openly admonished" opposing counsel. Further, as acknowledged by Ms. Gissinger, the trial court repeatedly sustained her objections.

{¶28} An appellant's brief is required to contain [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). *See also* Loc.R. 16(A)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations

to legal authority and facts in the record." *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 WL 61619, *3 (Feb. 9, 1999). *See also* App.R. 16(A)(7).

{¶29} Pursuant to App.R. 12(A)(2), this Court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." This rule reflects the principle that "[a]n appellant bears the burden of affirmatively demonstrating error on Appeal." *In re Robinson*, 9th Dist. Summit No. 20826, 2002 WL 501149, *2 (Apr. 3, 2002).

{¶30} Under this assignment of error, Ms. Gissinger has failed to adequately develop any argument as to an alleged error committed by the trial court and has failed to provide any citations to authority that might support her contentions. Furthermore, the fact that the trial court sustained Ms. Gissinger's objections to opposing counsel's assertions of legal liability belies appellant's assertion of prejudice. *Ryan v. Alexy*, 9th Dist. Lorain No. 3255, 1982 WL 4978, *3 (Apr. 28, 1982), citing *Levy v. Coon*, 11 Ohio App.2d 200 (10th Dist.1964). We also note that these allegations were not argued before the trial court in Ms. Gissinger's motion for judgment notwithstanding the verdict.

{¶31} Ms. Gissinger's third assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

THE COMMON PLEAS COURT ERRED IN COMMUNICATING WITH THE JURY DURING DELIBERATIONS WITHOUT THE KNOWLEDGE OF THE PARTIES.

**{¶32}** In her fourth assignment of error, Ms. Gissinger argues the trial court erred by having ex parte communication with the jury.

**{¶33}** "'To prevail on a claim of prejudice due to an ex parte communication between the judge and jury, the complaining party must first produce some evidence that a private contact occurred between the judge and jurors, without full knowledge of the parties, which involved substantive matters.'" *Brody v. SCR-SCP, Inc.*, 9th Dist. Medina No. 06CA0062-M, 2007-Ohio-1477, ¶ 8, quoting *State v. Tate*, 9th Dist. Summit No. 12111, 1985 WL 4384, *1 (Dec. 11, 1985), citing *State v. Jenkins*, 15 Ohio St.3d 164, 236-37 (1984). "There is a presumption that an ex parte communication between a judge and a jury is prejudicial although that presumption is not conclusive." *Brody* at ¶ 8, citing *State v. Schiebel*, 55 Ohio St.3d 71, 84 (1990). "Thus, once such ex parte communication is shown, the burden shifts to the opposing party to demonstrate that the communication was either of a procedural nature or a harmless communication." *Brody* at ¶ 8.

**{¶34}** On the morning of January 27, 2020, the jury asked two questions, which were answered by the trial court judge without conferring with the parties' attorneys:

Q.  Do all 8 jurors weigh in on Interrogatory C or just the six that said yes to B?

A.  All jurors consider Interogatory [sic] C.

Q.  Interrogatory E.  We only have 5 jurors who answered "yes" to all 4—ABCD. What do we do?

A.  You must continue your deliberations regarding interrogatories A-D with the objective of reaching an agreement.

{¶35} This court concludes that both of these questions were of a procedural nature, dealing with issues as to the instructions given for answering the interrogatories. We find nothing prejudicial in the answers provided by the trial court judge, nor does Ms. Gissinger demonstrate any prejudice. We further note that prior to reading the verdict of January 27, 2020, the trial court judge informed counsel for both parties that she had answered two questions from the jury regarding the "roadmap" of the interrogatories and had therefore not convened counsel before answering. Counsel for Ms. Gissinger was then given the opportunity to review the questions and answers, and when asked by the trial court judge if there was anything further, counsel did not enter any objection. As this Court has stated, the failure to raise a matter before the trial court deprives that court of the opportunity to correct any errors and forfeits the right to challenge those issues on appeal. *Pulled From the Pits Rescue & Sanctuary v. Dabernig*, 9th Dist. Wayne No. 15AP0061, 2016-Ohio-7255, ¶ 6, citing *Ilg v. Ilg*, 9th Dist. Summit No. 23987, 2008–Ohio–6792, ¶ 6.

{¶36} Ms. Gissinger's fourth assignment of error is overruled.

III.

{¶37} Ms. Gissinger's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

TERRENCE J. KENNEALLY and SEAN M. KENNEALLY, Attorneys at Law, for Appellant.

MARK J. OBRAK and ALEXANDER L. PAL, Attorneys at Law, for Appellee.