This is an appeal from an order of Judge Patricia A. Cleary following a jury trial. Appellants Karl Lessman, Jr., his wife and minor children, claimed that the negligent, willful and wanton conduct of appellees Denney's, Inc. and Flagstar Enterprises Inc. (Denney's) caused and/or joined with the intentional and malicious conduct of appellees Thomas Nevits and Daniel Cina, who assaulted and battered him, causing severe personal injuries and emotional distress. They claim the judge erred: (1) when she denied their motion for directed verdict at the close of their case in chief; (2) when she failed to grant their motion for Judgment Notwithstanding the Verdict that found in favor of all appellees; and (3) when she failed to grant a new trial on the basis that the verdict was contrary to law and against the weight of the evidence. The Lessmans further contend that a mistrial occurred because the jury did not answer all the interrogatories. Denney's counters that no errors occurred and Nevits and Cina assert the jury was correct in finding that the Lessman's assault and battery claims against them were barred by the statute of limitations. For the reasons that follow, we affirm.
From the trial transcript we find: On Tuesday, April 26, 1995, at about 2:00 a.m. Lessman, a City of Cleveland Police Officer, and his wife arrived at the Denny's Restaurant on West 150th Street in Cleveland. Earlier, they attended Mrs. Lessman's bowling banquet and then celebrated Lessman's 32nd birthday at a local pub. Shortly after the Lessmans were seated in a booth in the corner of the restaurant, Nevits, Cina, and Jason Penney came in and were seated diagonally across the room from the couple.
The men had started drinking beer at Penney's home the evening before, although Nevits was the only one of legal drinking age. They spent the later portion of the night and the early hours of Tuesday in unsuccessful attempts to purchase alcohol at two local bars. Terry Koran, a Denny's waitress, testified that they were really drunk, demanding free meals and claiming that a manager had told them they would receive a complimentary meal because of a previous bad dining experience.
Koran, who worked the third shift between 10:00 p.m. and 6:00 a.m., testified that in the few months she had worked at Denny's, she had experienced many security problems including drug and gang activity, fighting, and people leaving without paying their bill. On Thursday, Friday and Saturday nights, Denny's had armed security guards on duty at the restaurant but Koran believed that security was necessary daily on every third shift because, after the bars closed, intoxicated patrons would come to the restaurant. She stated she complained to management about these problems, but felt they disregarded her concerns by telling her to call the police when problems occurred and by not providing her with security training.
When the three men became insistent about getting a free meal, Koran told them she could not "comp" their meals without a manager's approval and he was unavailable.[1] The men then raised their voices and resorted to "yelling obscenities at everyone in the room." Nevits admitted that, when asked by Koran to calm down, he rose to his feet and bowed his head, but she described it as a "mocking" apology. Nevits stated that, at that point, Lessman said, "Sit down, you punk."
Lessman denied making those remarks and stated that Nevits resorted to "mouthing" obscenities as he sat down. He admitted watching the three men, attributing it to his police training. Nevits admitted asking Lessman what he was looking at and to "suck his d---." Both Lessman and his wife believed Nevits directed the latter comment to her. Lessman claimed, he just shook his head and made no response. Nevits described his own behavior that evening as outgoing and that he and his friends were just having fun. Koran thought that once she serve them food, they might settle down.
The testimony varies concerning the events that followed the apology. From her testimony, it is evident that Mrs. Lessman thought Koran had been her waitress, but Koran denied this and Lessman did not recognize her as his waitress. Mrs. Lessman testified she noticed that when the waitress returned to their table, she had tears in her eyes and her chin quivered. Further, the waitress said she was afraid to return to the men's table and that only she, another waitress, and the cook were working that night. Mrs. Lessman said she suggested that the waitress call the police but Lessman, after identifying himself as an off-duty Cleveland police officer, advised the waitress he did not feel that it was appropriate for her to call the police at that time, but to call 9-1-1 if he left his seat.
It was Koran's testimony that Lessman calmly asked the men to lower their voices so others could enjoy their breakfast. When the obscene language and verbal assaults from the men increased, Lessman then walked over to the table, identified himself as an off-duty police officer, showed his badge, asked them a second time to lower their voices and returned to his seat. At that point, she said the men quieted to some extent but began mocking Lessman, again, with a false apology. Then, she said, Lessman left his seat and walked toward the men a third time and identified himself as an officer a third time.
Lessman, however, denied approaching the men more than once. He claimed he left his seat fifteen minutes after the men had arrived and walked toward their table. He said nothing at that point to his wife, but she described his demeanor as calm. He admitted that he had intended to handle the matter as a Cleveland police officer but did not have the opportunity to identify himself because, as he began to pull his police badge case out of his back pocket, Nevits grabbed his throat. He immediately grabbed Nevits by the shirt and threw him down into the booth. He felt a blow to the right side of his face between the chin and jaw and thought that he was rendered unconscious. Mrs. Lessman claimed she heard the men say that were going to kill both her and her husband.
Nevits claimed, however, that Lessman grabbed him by the throat, threw him down in a booth, yelled obscenities at him, and then, in self-defense, Nevits grabbed Lessman by the throat. Cina testified he saw Lessman grab Nevits' throat with both hands, and admitted swinging at Lessman's head and arm to break up the fight.
Diane Cervelli testified she and her daughter, Natalie, had stopped at Denny's that night for a bite to eat after work. She had a limited memory of the events but said that the men had been obnoxious and characterized their actions toward Mrs. Lessman as rude. According to Cervelli, Lessman did nothing to provoke the beating and she did not hear him identify himself as a police officer.
After beating Lessman, the men sat down at their table and he returned to his wife with what she described as a red and swollen face. Lessman denied provoking the men, and thought that he had identified himself as a police officer after the attack.
In her call to 9-1-1, the second, unidentified waitress reported the fight and informed the operator that one of the persons involved was a police officer. Mrs. Lessman said that, after someone yelled that the police were on their way, the three men ran out the door shouting that they were going to kill her and her husband. The police officers apprehended the three men in the parking lot and Nevits and Cina eventually pleaded guilty to assault, a misdemeanor.
As a result of the beating, Lessman sustained injuries to his face, neck and head, a concussion and sprain/strain to his cervical spine. He claimed permanent injuries including headaches, neck and upper back pain, memory loss and emotional distress. When he returned to work five months later in September 1995, he transferred from the motorcycle unit and lost substantial overtime pay.
The Lessman family filed this complaint on January 24, 1997, naming fifteen defendants including two John Does and three named owners of the Denny's restaurant; Nevits, Cina, Penny and Myron G. Trembly; two John Doe owners of the Denny's restaurant real estate; a John Doe restaurant on the Denny's property; a John Doe property manager; a John Doe security company; and a John Doe security guard. The Denny's owners/operators filed answers; Trembly, the property owner, filed an answer and was later dismissed; Nevits and Cina filed answers and Penny was served but did not answer. None of the John Does was identified or personally served within one year. Various motions for summary judgment were denied and the jury trial commenced on May 4, 1998.
Paul Adamczak, an area manager for Denny's Restaurants, testified that Denny's December 1994 safety manual required employees to report any injury to management as soon as it happens. It indicated that every employee must be trained in proper standards and procedures, including those that provided that when a fight or disturbance occurred inside the building, the area should be cleared of customers and the police called. It also provided Guidelines for Dealing with Disruptive Guests, noting that the specifics of the incident[s] are different but suggesting a common sense approach of using a tone of voice and demeanor which does not appear aggressive or defensive, and asking the persons to stop their behavior. If the persons continue their disruptive behavior after a second request, the management personnel should then ask them to leave and process the appropriate documentation. Under a separate topic, the manual indicated that, if the guest is engaged in loud profanity, management personnel should also immediately ask a guest to leave and make the appropriate documentation. Each situation is different, Adamzcak explained, and the employees were encouraged to use common sense with patrons when a manager was unavailable.
Adamzcak admitted that, during the Lessmans' incident, the employees followed about 50 percent of the protocol of Management Responsibilities and Controls, but zero percent of that portion of the manual requiring immediate expulsion. He did not, however, find that Koran violated any Denny's policy or procedure because he understood she believed the situation was under control after she had asked the men to apologize.
The jury returned a unanimous verdict in favor of Denny's, Nevits and Cina on the Lessmans' complaint. In answer to the first of eleven interrogatories, it made a unanimous finding that the assault and battery claims against Nevits and Cina were barred by the statute of limitations. The jury left blank the remaining interrogatories through which it was to indicate monetary amounts to be awarded to Karl and Diana Lessman on the claim of each for: (1) intentional infliction of emotional distress against Denny's, Nevits and Cina; (2) negligence against Denny's; and (3) punitive damages and attorney fees against Denny's, Nevits and Cina.
On May 13, 1998, the judge entered a default judgment against an unidentified defendant in favor of the Lessmans for $25,000 compensatory damages, $10,000 for punitive damages and attorney fees.[2] On May 15, 1998, the judge entered judgment in accordance with the verdict and the Lessmans filed a motion for judgment notwithstanding the verdict, which motion was denied on July 17, 1998.
The Lessmans assert as their first of six assignments of error:
 I. THE JURY FAILED TO ANSWER ALL OF THE INTERROGATORIES, [SIC] THUS A MISTRIAL OCCURRED.
The Lessmans contend that a mistrial occurred because the jury considered only the first of the eleven interrogatories, i.e., whether allegations of civil assault and battery by Nevits and Cina were time barred by the one-year statute of limitations, when it rendered judgment in favor of Denny's, Nevits and Cina on all their claims. They argue that the four-year limitations period set forth in R.C. 2305.09 applies to their claims of intentional infliction of emotional distress against Nevits and Cina and especially against Denny's under a premises liability theory. They conclude the jury was confused and failed to continue the deliberations that would have resulted in a verdict in their favor. The Lessmans also assert that, because the judge read only the general verdict into the record and immediately discharged the jury, they had no idea that the jury had not answered all the interrogatories and were denied the opportunity to object until after the jury was discharged.
Denny's counters that the interrogatories were consistent with the general verdict because the interrogatories asked the jury not whether Denny's was negligent, but only the amount to which the Lessman's were damaged by Denny's negligence and/or intentional infliction of emotional distress. Nevits and Cina assert that because the Lessmans' claim of intentional infliction of emotional distress arose out of the act of assault and battery, it was governed by the one-year statute of limitations. They also argue that the Lessmans' failure to object while the jury was impaneled waives appellate review.
Addressing first the question of waiver, the Lessman's cite O'Connell v. Chesapeake Ohio R.R. Co. (1991), 58 Ohio St.3d 226,569 N.E.2d 889, to support the proposition that they did not waive appellate review. The Supreme Court in O'Connell noted that the inconsistencies in the general interrogatories and verdict were not readily discoverable. Id., 58 Ohio St.3d at 229. Considering the atmosphere of a long, involved trial, and given that there was little chance of discovering the inconsistencies without a protracted examination and comparison of the interrogatory forms themselves, appellant cannot be said to have waived her challenges to the jury's answers. Id. at 229. The court, however, expressed its opinion that the jury's inconsistent answers to the interrogatories are tantamount to plain error. Id.
The situation here, however, is factually different. The judge read the verdict into the record, polled the jury, and thereafter discharged the jury without affording the parties an opportunity to preserve their objection for the record. Cf. Avondet v. Blankstein (1997), 118 Ohio App.3d 357, 369,692 N.E.2d 1063 (doctrine of waiver applied where counsel consciously waited for the jury to be excused before she made any objection, thereby preventing the court from correcting the inconsistency under Civ.R. 49(B)); Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 61,603 N.E.2d 1114 (waiver occurred when, after the jury returned its verdict, the judge expressly questioned the parties on whether each had anything to add but neither party responded, precluding application of remedies under Civ.R. 49). We also note that during deliberations, the judge answered the following jurors' questions, in writing but off the record:
Judge Cleary:
 If we find the claim is time barred, do we consider interrogatories 2 and 3 [which individually address the intentional infliction of emotional distress claims of Diane Lessman against Cina and Nevits]?
 [signature of foreperson] 5/7/98 Yes
 /s Judge Patricia Cleary 5/7/98
 If we find for the defendants, do we need to sign interrogatories 2 through 11?
 [signature of foreperson] 5/8/98 No
 /s Patricia A. Cleary 5/8/98
Under these limited circumstances, we conclude that the Lessmans have not waived our review of this assignment of error.
The failure to answer jury interrogatories submitted under Civ.R. 49(B) does not, in itself, constitute grounds for a mistrial. Civ.R. 49(B) provides in pertinent part:
 When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.
 As the rule makes clear, the answers to one or more interrogatories must be inconsistent with the general verdict before the curative aspects of Civ.R. 49 may be invoked. The 1970 staff notes accompanying the rule provide guidance. [I]f an interrogatory is requested, the interrogatory ought to be phrased so as to lead to or be directed to the jury's answering a question involving a determinative issue. In other words, inasmuch as a jury with proper instructions by the court decides determinative or ultimate issues (issues which dispose of the case) in its general verdict, an interrogatory to the jury is designed to test the jury's thinking in resolving a determinative or ultimate issue in the case; hence the interrogatory should be directed to the testing of or the verification of the jury's general verdict.
At bar we note that each unanswered interrogatory presumes a general verdict in favor of the Lessmans and asks only for the amount of damages on a particular given claim against each stated defendant. As such, the blank, unanswered interrogatory would not be inconsistent with the general verdict[s] in favor of the defendants. Civ.R. 49(B). The judge did not err in denying a new trial.
The Lessmans also argue that, even though the jury concluded that their civil assault and battery claims against Nevits and Cina were barred by the one-year statute of limitations, their individual, intentional infliction of emotional distress claims against the two were not barred by the same statute of limitations. Even if we agreed with the Lessmans' proposition, the jury rendered a general verdict in favor of Cina and Nevits upon the merits of the Lessmans' intentional infliction of emotional distress claims. Because the answer to this particular issue is not determinative of this assignment of error, we need not address it. The first assignment of error is not well taken.
 III. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION FOR DIRECTED VERDICT ON THE ISSUE OF LIABILITY AT THE CLOSE OF PLAINTIFFS'-APPELLANTS' CASE AND AT THE CLOSE OF DEFENDANTS-APPELLEE'S CASE.
The Lessmans suggest that [h]ad the trial court granted a directed verdict on liability at that time, (the close of their case) before determining damages and prior to the presentation of Appellees' case in chief, a substantially different result may have occurred.
Contrary to their assertion, the record does not reflect the Lessmans made a motion for a directed verdict at the close of their case in chief. The transcript reveals that the judge merely discussed the possibility of granting one, nothing more. As such, the error is not preserved for this court's review.
But, even if the Lessman's had moved for a directed verdict at that time, Civ.R. 50(A)(1) does not allow a plaintiff to move from a directed verdict at that stage of the trial. Civ.R. 50(A)(1) provides that [a] motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence. As such, this portion of the third assignment of error is not well taken.
Finally, the Lessmans base the text of their argument solely upon this first motion for directed verdict; they do not address that portion of the assignment of error which challenges the judge's ruling on the second motion for directed verdict made at the close of defendants' case. Pursuant to the authority set forth in App.R. 12(A)(2), this court will disregard that portion of the Lessmans' assignment of error for the reason that they failed to separately argue the merits of such error within the text of their brief.
 IV. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
The Lessmans argue here evidentiary matters supporting a plaintiffs' verdict. They contend because Nevits and Cina entered guilty pleas to the criminal charges of the intentional assault against Lessman, such concession constituted, at a minimum, liability for all defendants-appellees. They point to the admission that, despite its knowledge of the risks involved with disruptive patrons during the early morning business hours, Denny's failed to follow any of its procedures for dealing with patrons like Nevits and Cina. They stress the absence of any testimony that contradicts Lessman's injury or damages claims. They contend that, because [l]egally and factually nothing changed * * * at trial from the close of their case in chief, the judge erred when she failed to enter judgment in their favor and grant a new trial on damages only.
Denny's counters that the mere fact Nevits and Cina pleaded guilty to assault does not automatically entitle the Lessmans to damages. In addition, the Denny's area manager testified that the personnel on duty that night followed at least 50% of the safety procedures and, therefore, the Lessmans are precluded from seeking damages against it.
Pursuant to Civ.R. 50(B), a party may move for judgment notwithstanding the verdict or, in the alternative, a motion for new trial regardless of whether the party has moved for a directed verdict. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. * * * If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. Civ.R. 50(B). A movant may join a motion for new trial with a motion for judgment not withstanding the verdict, or the movant may pray for a new trial in the alternative. Id.
The standard for granting a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,679, 693 N.E.2d 271. Civ.R. 50(A)(4) states as follows:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
When considering a motion for directed verdict, a judge may not consider the weight of the evidence or credibility of the witnesses. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119, 671 N.E.2d 252. Rather, the judge tests `the legal sufficiency of the evidence to take the case to the jury.' Id., quoting Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68-69, 23 O.O.3d 115, 116-117, 430 N.E.2d 935, 938. `The reasonable minds test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of [the claims of the party against whom the motion is directed]. * * * A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.' (alteration original)" Id., quoting Ruta, supra.
First, we note that the Lessmans failed to cite, nor could we find, any authority for the proposition that Nevits' and Cina's guilty pleas to assaulting another restaurant patron established Denny's civil liability. The Lessmans' arguments essentially challenge the defenses and presuppose that they have established the elements of their claims against Denny's. At trial, they attempted to establish Denny's negligence by showing that its employees failed to comply with the mandates of the management training manual and, as a result, the Lessmans sustained damages due to this noncompliance. Construing the evidence most strongly in favor of Denny's, the evidence showed that Denny's employees complied with the management training manual when Koran asked Nevits, Cina, and Penney to calm down and when the second, unidentified waitress called for police as the fight ensued. As such, reasonable minds could not conclude that Denny's failed to submit evidence showing a defense to the Lessmans' claims. Therefore, it was not an error to deny the motion for judgment notwithstanding the verdict.
The Lessmans' fourth assignment of error is not well taken.
 II. THE JURY VERDICT IS CONTRARY TO LAW V. THE TRIAL COURT ERRED BY FAILING TO GRANT A NEW TRIAL.
 VI. THE JURY'S VERDICT WAS CONTRARY TO THE EVIDENCE PRESENTED AT TRIAL.
The Lessmans claim that the verdict is against the manifest weight of the evidence. They stress that Denny's was aware of security problems at the West 150th St. location and, according to its own employee handbook and safety manuals, should have immediately expelled Nevits and Cina from the premises. Although the Lessmans acknowledge they did not file any claim for damages arising out of the assault and battery before April 27, 1996, they claim Lessman was under a disability because he suffered a serious memory loss and did not properly function during the period preceding the filing of the complaint, thus tolling the statute of limitations.
Denny's counters that the evidence showed Lessman to be the initial aggressor, that the fight was not foreseeable and, moreover, competent, credible evidence proved that it did not act in a negligent manner. Cina asserts that reasonable minds could believe that he acted in self-defense, and Nevits contends that the verdict is supported by competent, credible evidence. Therefore, all three find no abuse of discretion in failing to order a new trial.
The decision on a motion for a new trial pursuant to Civ.R. 59 lies within the sound discretion of the judge, and a reviewing court will not disturb the decision unless it was unreasonable, unconscionable or arbitrary. Rohde v. Farmer (1970), 23 Ohio St.2d 82,262 N.E.2d 685, paragraph one of the syllabus; Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219. When a judge considers a motion for new trial pursuant to Civ.R. 59(A)(6) on the basis that the judgment is not sustained by the weight of the evidence:
 the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence.
Rohde, 23 Ohio St.2d paragraph three of the syllabus. Because the judge's review of the weight of the evidence pursuant to Civ.R. 59(A)(6) involves questions of fact, the abuse of discretion standard requires a reviewing court to view the evidence favorably to the trial court's action rather than to the original jury's verdict. Whites v. DeBartolo Realty Partnership (Oct. 8, 1998), Cuyahoga App. 73336, unreported, citing Malone v. Courtyard By Marriot Ltd. Partnership, (1996), 74 Ohio St.3d 440, 448,659 N.E.2d 1242. An appellate court defers to the judge's decision on a motion for new trial because that judge is better situated to pass upon questions of witness credibility, and the surrounding circumstances and atmosphere of the trial, to determine whether the jury's verdict resulted in manifest injustice. Whites, supra.
We address the question of whether Lessman was under a disability pursuant to R.C. 2305.16 which tolled the one-year statute of limitations applicable to claims of civil assault and battery, R.C. 2305.10 and R.C. 2305.111. Section 2305.16 provides:
 Unless otherwise provided in sections 1302.98, 1304.35, 2305.04 to 2305.14, or 2744.02 of the Revised Code, if a person entitled to bring an action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.
 After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as being of unsound mind by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease that renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought.
In Fisher v. Ohio Univ. (1992), 63 Ohio St.3d 484,589 N.E.2d 13, syllabus, the Supreme Court considered the question of disability due to unsound mind and concluded that statute applies to toll the limitations period only when the claimant presents evidence substantiating he or she was of unsound mind and the disease or condition (1) was determined by a psychiatrist or licensed physician who treated the claimant during his confinement to have rendered him of unsound mind, or (2) is generally accepted by the medical community as one causing unsound mind. Because the Lessmans presented nothing to satisfy either condition (1) or (2) of Fisher, the weight of the evidence supported the conclusion that the one-year limitations period for civil assault and battery barred these claims against Nevits and Cina. There was no error in denying the motion for new trial on the assault and battery claim.
Likewise, the judge did not abuse her discretion when she denied the Lessmans' request for a new trial on the remaining claims. The evidence showed the following: (1) the Denny's employees did not follow the suggested procedure in the management training manual and ask Nevits, Cina, and Penney to leave the premises upon the use of obscene language; (2) the Denny's employees did follow the suggested procedure in the management training manual when the men were asked to calm down; (3) th Denny's employees did follow the suggested procedure in the management training manual and called the police; (4) the Denny's employees did follow the direction of Lessman, who had identified himself to the waitress as an off-duty police officer and had asked her to call police if he left his seat; (5) Nevits and Cina left their seats and attacked Lessman when he approached them; and (6) Lessman testified that he had acted in his capacity as a police officer as he approached the men.
Deferring to the judge's conclusion that the verdict was not against the weight of the evidence and did not result in manifest injustice, we cannot conclude that the judge abused her discretion in denying the Lessman's request for a new trial.[3] Rohde,23 Ohio St.2d 82 at paragraph one of the syllabus. The Lessmans' second, fifth, and sixth assignments of error are not well taken.
It is ordered that the appellees recover from appellants their costs herein taxed.
This court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ ANNE L. KILBANE, JUDGE
IANE KARPINSKI, P.J., CONCUR. AMES D. SWEENEY, J., CONCURS, IN JUDGMENT ONLY WITH SEPARATE OPINION.
[1] Koran explained to the jury that the manager was unavailable because he left early to make the last call at a local pub.
[2] On November 29, 1999, this court remanded the case back to the judge to clarify against which defendant the default judgment was rendered. By nunc pro tunc entry of December 1, 1999, Jason Penny was identified as the party against whom the judgment was rendered. It would appear, however, that on the face of the complaint, the statute of limitations would have barred any claim by the Lessmans against him.
[3] Cf. Hack v. Gillespie (1996), 74 Ohio St.3d 362,658 N.E.2d 1046, syllabus (reaffirmed fireman's rule); Gottas v. Consol. Rail Corp. (1993), 89 Ohio App.3d 153, 623 N.E.2d 1244 (notes that public policy considerations support applying the fireman's rule to police officers injured while performing their public duties).