LEAVERS, Appellee,

v.

CONRAD, Admr., Bureau of Workers' Compensation, et al., Appellants.

[Cite as *Leavers v. Conrad,* 156 Ohio App.3d 286, 2004-Ohio-850.]

Court of Appeals of Ohio,
Fifth District, Tuscarawas County.

No. 2003AP040036.

Decided Feb. 19, 2004.

Daniel Mills and Laura L. Mills, for appellee.

Jim Petro, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for appellants.

---

WILLIAM B. HOFFMAN, Presiding Judge.

{¶ 1} Defendant-appellant Administrator, Bureau of Workers' Compensation, appeals from the April 2, 2003 judgment entry entered by the Tuscarawas County Court of Common Pleas, which overruled appellant's motion for judgment notwithstanding the verdict. Plaintiff-appellee is Mark A. Leavers.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On December 5, 2001, appellee filed a petition pursuant to R.C. 4123.512 in the Tuscarawas County Court of Common Pleas. Therein, appellee sought review of the November 1, 2001 order of the Industrial Commission of Ohio, which denied further appeal of the denial of his application for workers' compensation benefits, and which affirmed a finding that appellee was not an employee of defendant Bruce Daniels Construction on December 7, 2000, when he sustained injuries as a result of a fall at the construction job.[1]

---

1. Defendant Bruce Daniels Construction is not a party to this appeal.

{¶ 3} The matter came on for trial on March 13 and 14, 2003. The parties stipulated that the sole issue for the jury was whether appellee was an employee of Bruce Daniels Construction or a self-employed subcontractor on the date of his injury.

{¶ 4} R.C. 4123.01(A)(1)(c) sets forth the criteria to determine whether a construction worker is an employee. The statute provides:

{¶ 5} "(A)(1) 'Employee' means: * * *

{¶ 6} "(c) Every person who performs labor or provides services pursuant to a construction contract, as defined in section 4123.79 of the Revised Code, if at least ten of the following criteria apply:

{¶ 7} "(i) The person is required to comply with instructions from the other contracting party regarding the manner or method of performing services;

{¶ 8} "(ii) The person is required by the other contracting party to have particular training;

{¶ 9} "(iii) The person's services are integrated into the regular functioning of the other contracting party;

{¶ 10} "(iv) The person is required to perform the work personally;

{¶ 11} "(v) The person is hired, supervised, or paid by the other contracting party;

{¶ 12} "(vi) A continuing relationship exists between the person and the other contracting party that contemplates continuing or recurring work even if the work is not full time;

{¶ 13} "(vii) The person's hours of work are established by the other contracting party;

{¶ 14} "(viii) The person is required to devote full time to the business of the other contracting party;

{¶ 15} "(ix) The person is required to perform the work on the premises of the other contracting party;

{¶ 16} "(x) The person is required to follow the order of work set by the other contracting party;

{¶ 17} "(xi) The person is required to make oral or written reports of progress to the other contracting party;

{¶ 18} "(xii) The person is paid for services on a regular basis such as hourly, weekly, or monthly;

{¶ 19} "(xiii) The person's expenses are paid for by the other contracting party;

{¶ 20} "(xiv) The person's tools and materials are furnished by the other contracting party;

{¶ 21} "(xv) The person is provided with the facilities used to perform services;

{¶ 22} "(xvi) The person does not realize a profit or suffer a loss as a result of the services provided;

{¶ 23} "(xvii) The person is not performing services for a number of employers at the same time;

{¶ 24} "(xviii) The person does not make the same services available to the general public;

{¶ 25} "(xix) The other contracting party has a right to discharge the person;

{¶ 26} "(xx) The person has the right to end the relationship with the other contracting party without incurring liability pursuant to an employment contract or agreement."

{¶ 27} At the close of evidence, the trial court recessed the jury and reviewed the jury instructions, verdict form, and interrogatory with the parties. A lengthy discussion commenced regarding the form of the interrogatory. The trial court proposed a single interrogatory, which set forth the 20 factors listed in R.C. 4123.01(A)(1)(c) with a "yes" or "no" to be circled for each, and concluded with a single set of eight signature lines for the jurors. Counsel for appellant proposed that each factor be followed by eight signature lines. The trial court ultimately agreed with counsel for appellant and revised the interrogatory form to include eight signature lines under each criterion.

{¶ 28} Counsel for the parties proceeded to debate how the jury's answers to the interrogatory should correlate to the general verdict. Counsel for appellant argued that each individual juror who signed the verdict form was required to respond appropriately to the 20 interrogatory factors, explaining that because appellant needed at least six signatures on the verdict form, each juror who signed the verdict form was required to find ten or more of the factors applied. Counsel noted that although the verdict-signing jurors did not have to agree on each criterion, each juror's verdict had to comport with the number of affirmatively answered interrogatories. Thus, a juror finding ten or more factors could not enter a verdict against appellee, nor could a juror finding fewer than ten enter a verdict in favor of appellee. Counsel for appellee disagreed, arguing that it was irrelevant which individual juror voted on each of the factors and how many factors that individual found and that there need be only a majority on each factor.

{¶ 29} The trial court responded:

{¶ 30} "I understand. So, [counsel for appellant], your position is clear that you wanted and will get after each of the factors or criteria—I will modify that and place eight lines under each of those factors or criteria and we'll see what happens to each of those. * * *

{¶ 31} "And then there will be a verdict form and there'll be eight signature lines and we'll see whose names are on there and depending on what the * * * the breakout is * * *.

{¶ 32} "Okay. And the fact of the matter is if we get a verdict form back for [appellee] we're going to know who's signed that verdict form for [appellee], which is going to circle the portion indicated, and then of course you can check and we'll all check as to which jurors signed the individual factors and then you'll make your argument if you feel there's one that needs to be made that it's not legitimate verdict.

{¶ 33} "COUNSEL FOR APPELLANT: Right.

{¶ 34} "THE COURT: And, [counsel for appellee], you'll make yours to the contrary.

{¶ 35} "COUNSEL FOR APPELLEE: Yes."

{¶ 36} Thereafter, the jury was returned to the courtroom.

{¶ 37} The trial court proceeded to instruct the jury as to the law to be applied to the instant action:

{¶ 38} "In order for [appellee] to participate in the Workers' Compensation fund he must establish in this case by the greater weight of the evidence that he was an employee of Bruce Daniels Construction Company on December 7, 2000, when he suffered the work-related injuries.

{¶ 39} "[Appellant] oppose[s] [appellee's] claim and assert[s] or contend[s] that on December 7, 2000, [appellee] was not an employee of Bruce Daniels Construction Company but instead was an independent contractor and as such is not entitled to participation in the Workers' Compensation fund of Ohio. * * *

{¶ 40} "An employee, * * * means every person who performs labor or who provides services pursuant to a construction contract if at least 10 of the following 20 criteria or factors apply. And I'm going to read those to you now * * *.

{¶ 41} "* * * [A]n independent contract on the other hand carries on an independent business and agrees to do specific jobs without direction or control by the party who hired him or her. * * *

{¶ 42} "* * * [T]he independent contractor has the right of control over the performance of the work and the methods used.

{¶ 43} "The principal inquiry then in determining the character of the working relationship between [appellee] * * * and Bruce Daniels Construction Company is whether the employer has reserved the right to control the manner or means of doing the work. * * *

{¶ 44} "* * * [I]f you find that [appellee] has proved to you by the greater weight of the evidence that at least 10 of the criteria or factors relating to the work relationship between [appellee] and [Bruce Daniels Construction Company] on December 7, 2000, did apply and your answer to Interrogatory No. 1—and I'll talk to you about Interrogatory No. 1 in a moment—is yes to at least 10 of the criteria or factors, then [appellee] has proved again by the preponderance of the evidence that he was an employee of Bruce Daniels Construction Company and thus is entitled to participate in the Workers' Compensation Fund of Ohio, and your verdict must be for [appellee]. * * *

{¶ 45} "[However, if] your answer to Interrogatory No. 1 is no to at least 11 of these criteria or factors, then [appellee] has failed to prove by a preponderance of the evidence that he was an employee of Bruce Daniels Construction Company and is not entitled to participate in the Workers' Compensation Fund of Ohio, and your verdict must be for [appellant]. * * *

{¶ 46} "I'm now going to discuss with you the verdict form and the interrogatory. The interrogatory is a jury question although it's a fairly involved one. I'll go over that in a moment. * * * One verdict form's going to be available and it reads, 'we, the Jury, duly impaneled and sworn, find that the Plaintiff, Mark A. Leavers,'—and then there's a breakout—and it says, 'was' and there's another 'was not' so was or was not an employee of Bruce Daniels Construction Company on December 7, 2000.

{¶ 47} "I tell you to circle one, that's how were going to know your verdict. You'll circle either was or was not an employee and you'll have, of course, eight signature lines and the date. And at least six of your number have to agree upon whatever verdict you choose in order to have a legitimate or a lawful verdict.

{¶ 48} "Any questions about that, folks? Fairly straightforward. Okay.

{¶ 49} "Now, little less straightforward, but nonetheless an important consideration. This document I'm holding up to you now is called a Jury Interrogatory, it's a question. And it reads, 'Do you find by the greater weight of the evidence that Plaintiff has proved that the following criteria factors apply to the work relationship between Mark A. Leavers and Bruce Daniels construction company on December 7, 2000, at the time of Mr. Leavers' injury?'

{¶ 50} "And I tell you, 'Circle yes or no relating to each of the factors or criteria.' Those 20 factors or criteria I read to you in the instruction they are identical on this interrogatory. Those are the 20 I'm talking about.

{¶ 51} "Now, what you'll do, * * * is you'll go through these 20 criteria or factors and when six of your number have agreed on an answer, yes or no, that a particular factor either applied on December 7, 2000, or did not, you will circle it and then those jurors who have agreed, at least six again have to agree before you have an answer to any of these criteria, you'll sign your name on the signature lines. We'll provide eight—after each of the criteria, but the six who agree, at least six, could have more, but if you don't have six, you don't have an answer. You'll put your names on those lines after each factor or criteria and you go through the list and we hope be able to get at least six to answer yes or no on either one your choice of course. If you can't get six to answer one, go on to the next one an if you get to a point where you don't believe you're going to be able to get six to answer one you can, of course, * * * contact me during these deliberations and you can ask me for instructions or directions * * *

{¶ 52} "* * * [T]his interrogatory is something that you ought to go through and do the work that I've just indicated you're to do before you sign the verdict. This document is to give us some assistance to make sure that the verdict that you've returned is based on the instructions of law that I've given and in this case that's the analysis of the 20 factors or criteria.

{¶ 53} "Do any of you have any questions about my explanation on this jury interrogatory? Okay. Good." [2]

{¶ 54} The jury commenced deliberations. Several hours later, the jury advised the trial court it had reached a verdict. The trial court reconvened the jury and read the verdict, which reflected: "We, the jury, duly impaneled and sworn, find that [appellee] was an employee of Bruce Daniels Construction Company on 12–7–2000. We render this verdict upon the concurrence of at least 6 of our members, that being at least three-quarters or more. Each concurring juror signs his or her name hereto." The trial court read the jury's responses to each individual factor listed in Interrogatory No. 1 and noted the number of signatures correlating to each factor. The trial court calculated that six jurors answered "yes" to 11 of the factors, and "no" to the nine remaining factors. The jury foreman confirmed the trial court's calculations. The trial court then asked counsel for appellant whether he had any further requests of the trial court "as it

---

2. The trial court never fully explained to the jury how to correlate their verdict with their answers to the interrogatory. The trial court did not instruct before any juror could sign the general verdict that the same juror must first have been one of the six or more jurors who found for plaintiff on ten or more of the factors listed in the interrogatory. Likewise, the trial court did not instruct that a juror could sign the general verdict so long as any six or more of the jurors found for plaintiff on ten or more of the factors listed in the interrogatory even if any individual juror did not find for plaintiff on ten or more of the factors. In other words, the trial court never resolved the issue of whether the "same juror rule" or the "majority rule" applied.

relates to polling the jury." Counsel for appellant responded in the negative. The trial court explained to the jury counsel for appellant had declined any further inquiry into his/her individual verdict and individual answers to the interrogatory. The trial court continued:

{¶ 55} "So, what will happen now, ladies and gentlemen and [appellee], I will have this verdict and the interrogatories, of course, photocopied for counsel, filed at the Clerk's Office as the true work product of this jury in this case and then I'll reduce to judgment your verdict, meaning that this case will be resolved with a final judgment entry reflecting what you've done and sending, of course, that judgment to [counsel for appellant, counsel for appellee, and Mr. Daniels]. * * *

{¶ 56} "Now, ladies and gentlemen, I want to thank you again * * * I want to wish you the very best. Have a good weekend and I hope your experience was a positive one. If not positive, at least educational, and I look forward to seeking you all again. * * * You're free to go. Good-bye.

{¶ 57} "(JURY LEAVES THE COURTROOM)

{¶ 58} "THE COURT: Anything else before we adjourn?

{¶ 59} "COUNSEL FOR APPELLANT: May we see the interrogatories?

{¶ 60} "THE COURT: Sure. Sure. I'm going to have Pat make a copy of that for each of you.

{¶ 61} "COUNSEL FOR APPELLANT: Okay.

{¶ 62} "THE COURT: So as soon as that's done she'll deliver it to you and a copy of the verdict form and then she's going to file them and you'll have that to take home with you.

{¶ 63} "COUNSEL FOR APPELLANT: Okay."

{¶ 64} On March 18, 2003, appellant filed a motion to fashion a judgment entry in accordance with the answers to interrogatories notwithstanding the general verdict and a memorandum in support thereof. Appellant argued that Jennifer Wilhelm, one of the jurors, had answered "yes" to only eight of the 20 factors, but, nonetheless, had signed the general form finding that appellee was an employee of Bruce Daniels Construction. Appellant maintained the answers to the interrogatory, therefore, were inconsistent with the general verdict reached by the jury. Appellee filed a memorandum in opposition. Via judgment entry filed April 2, 2003, the trial court overruled appellant's motion and entered judgment for appellee consistent with the general verdict.

{¶ 65} It is from this judgment entry appellant appeals, raising the following assignments of error:

{¶ 66} "I. The court below erred when it failed to provide counsel with copies of the jury's responses to interrogatories and verdict vote before dismissing the jury, making timely objections impossible.

{¶ 67} "II. The court below erred by treating each interrogatory as a special verdict on each statutory factor so that each special verdict required the concurrence of six jurors.

{¶ 68} "III. Because R.C. 4123.01(A)(1)(c) sets forth the necessary findings of facts to determine whether the claimant was an employee, the same jury [sic] rule necessarily applied to the interrogatory answers and verdict in this case, and the court below erred in applying the any majority rule."

## I

{¶ 69} In its first assignment of error, appellant maintains that the trial court erred in failing to provide counsel with copies of the jury's responses to the interrogatory and verdict vote prior to dismissing the jury, thereby making a timely objection impossible.

{¶ 70} When the jury returned with its verdict, the trial court read aloud the verdict form and noted six signatures were affixed thereto. The trial court then read aloud the answer to each factor and the number of signatures. The trial court stated that it counted 11 "yeses" and nine "nos" and asked the jury foreman whether the verdict was correct as announced. The foreman answered affirmatively. The trial court then asked counsel for appellant whether he had "any further requests of me as it relates to polling the jury?" Counsel for appellant responded in the negative, and the trial court excused the jury. After the jury exited the courtroom, the trial court asked counsel whether there was "anything else before we adjourn?" Counsel for appellant asked to see the interrogatory, and the trial court advised counsel that his secretary would make the copies of the interrogatory, which counsel promptly received.

{¶ 71} Appellee asserts that appellant waived any objection to the interrogatory when it declined the opportunity to poll the jury. We disagree. We find waiving any further polling of the jury to be a separate and distinct issue from waiving the right to inspect the signed interrogatory and verdict. However, before the trial court released the jury, we find that counsel for appellant had an affirmative obligation to ask to see the interrogatory. By failing to do so, appellant waived all but plain error with respect to any possible discrepancy between the interrogatory and verdict.

{¶ 72} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court,

seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. Upon review of the record, we find no indication of plain error in the instant case.

{¶ 73} Appellant relies upon the Ohio Supreme Court's decision in *O'Connell v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 569 N.E.2d 889, in which the Supreme Court found a jury's inconsistent answers to interrogatories were tantamount to plain error. Upon a thorough reading of *O'Connell*, we find that it is distinguishable from the instant action. *O'Connell* involved a comparative-negligence action. Under comparative-negligence principles, the participation of three-fourths of the jurors is required, such that a juror's failure to participate in answering an interrogatory could leave fewer than three-fourths of the jurors to participate in the apportionment of comparative negligence. In the case sub judice, although a juror found ten or fewer factors, the same juror was not precluded from finding that 11 of the factors had been answered affirmatively by the jury as a whole.

{¶ 74} Appellant's first assignment of error is overruled.

## II

{¶ 75} In its second assignment of error, appellant asserts that the trial court erred in treating each factor or criterion set forth in the interrogatory as a special verdict, requiring the concurrence of six jurors on each statutory factor. Specifically, appellant maintains that the trial court confused interrogatory responses subject to Civ.R. 49(B) with special verdicts, which were abolished by Civ.R. 49(C).

{¶ 76} A special verdict is defined as "a statement by the jury of the facts it has found—in essence, the jury's answers to questions submitted to it; the court determines which party based on those answers, is to have judgment." *Porada v. Garvin Group, Inc.* (May 12, 1993), Hamilton App. No. C–910268, 1993 WL 294006. We find the trial court did not determine judgment after the interrogatory was completed by the jury. Rather, the trial court presented the jury with a general verdict form that the jury was to complete following its completion of the responses to the interrogatory.

{¶ 77} Furthermore, appellant requested that the trial court follow each factor with eight signature lines for the jury. The trial court agreed to appellant's request. Appellant cannot now allege error as to a procedure it requested.

{¶ 78} Appellant's second assignment of error is overruled.

## III

{¶ 79} In its final assignment of error, appellant contends that the trial court erred in applying the "any majority" rule rather than "same juror" rule.

{¶ 80} During the discussions with the trial court and counsel for appellee, counsel for appellant raised the issue of the "same juror" rule. However, appellant did not object to the trial court's instruction as to the completion of the interrogatory and verdict form. Accordingly, we review this assignment of error under a plain-error analysis.

{¶ 81} Again, appellant relies upon *O'Connell v. Chesapeake & Ohio RR. Co.,* supra, in support of its position. As discussed in assignment of error one, we note that *O'Connell* involved a case of comparative negligence. We find the Supreme Court's rationale for applying the same juror rule inapplicable to the instant action.

{¶ 82} Appellant's third assignment of error is overruled.

{¶ 83} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

FARMER and JOHN W. WISE, JJ., concur.