DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the February 17, 2005 judgment of the Wood County Court of Common Pleas, which entered judgment in favor of appellees, Patrick J. Heider, Joseph P. Heider, Timothy M. Heider, and Michael E. Heider, following a jury verdict. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellants, Mary Ann Robon and Country Estates of Wood County, Ltd., assert the following assignments of error on appeal:
 {¶ 2} "1. THE VERDICT OF THE JURY AND THE CORRESPONDING JUDGMENT OF THE TRIAL COURT ARE NOT SUPPORTED BY THE EVIDENCE.
 {¶ 3} "2. THE TRIAL COURT ERRED AND/OR ABUSED ITS DESCRETION IN DENYING APPELLANTS' MOTION FOR DIRECTED VERDICT AND SUBMITTING THE APPELLEES' CLAIMS TO THE JURY, WHEN THE EVIDENCE PRESENTED FAILED TO ESTABLISH THE REQUISITE ELEMENTS OF ADVERSE POSSESSION AS A MATTER OF LAW.
 {¶ 4} "3. THE TRIAL COURT ERRED AND/OR ABUSED ITS DESCRETION IN DENYING APPELLANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT WHEN THE EVIDENCE PRESENTED FAILED TO ESTABLISH THE REQUISITE ELEMENTS OF ADVERSE POSSESSION AS A MATTER OF LAW.
 {¶ 5} "4. THE TRIAL COURT ERRED AND/OR ABUSED ITS DESCRETION IN ENTERING JUDGMENT UPON THE JURY VERDICT WHERE THE JURY'S RESPONSE TO SPECIAL INTERROGATORY NO. 3 IS INCONSISTENT AND IRRECONSILIBLE WITH THE JURY'S GENERAL VERDICT IN FAVOR OF APPELLEES.
 {¶ 6} "5. THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY AWARDING TITLE TO THE ENTIRE `GAP AREA' WHEN THE APPELLEES', AT A MAXIMUM, ONLY PROVED AN EASEMENT BY PRESCRIPTION TO CROSS THE `BRUSH AREA' OF THE `GAP' WITH FARM EQUIPMENT TO ACCESS THEIR FIELD FROM PLUMEY ROAD.
 {¶ 7} "6. THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY REFUSING TO INSTRUCT THE JURY THAT THE APPELLANTS WERE THE EQUITABLY TITLED OWNERS OF THE `GAP AREA' FOR CONSIDERATION DURING THEIR DELIBERATIONS."
 {¶ 8} The Heiders brought an action to quiet title to a narrow piece of property adjacent to their 60.58 acres of farmland in Wood County, hereinafter known as the "gap." The Heiders brought suit against their predecessors in title, the unknown heirs, devisees, and personal representatives of Frances (or Francis) Brenot, and the adjoining landowners, Country Estates of Wood County, Ltd. and Mary Ann Robon. The Country Estates of Wood County, Ltd. is owned by Marvin and Rudy Robon and their families. The Heiders claimed to have acquired title to the gap property by way of adverse possession for more than 21 years. Appellants asserted counterclaims for trespass and adverse possession and sought declaratory judgment that they were the true and lawful owners of the gap. The matter was submitted to the jury, which rendered a general verdict in favor of the Heiders on their complaint and against appellants on their counterclaims and answered interrogatories. Judgment was entered in favor of the Heiders.
 {¶ 9} The following evidence was presented at the trial regarding how the gap was created and why it was not incorporated into anyone's deed. The Heiders own 60.58 acres of farmland bordering Woodville Road to the north and Plumey Road to the southwest, which is part of the city of Northwood. The parcel is divided at the southern portion by a creek and is only accessible from Plumey Road. Appellants own an adjacent parcel of land that is part of the Douglas Farm Addition in Lake Township. The entire area was originally owned by a single party.
 {¶ 10} Expert witnesses for the Heiders testified that the entire parcel of land was once owned by Ebenezer Kellogg. In 1867, Kellogg split off 39.89 acres of land and sold it to Frances (or Francis) and John Brenot. In 1870, the Brenots divided their parcel and sold the east half to Joseph Cedoz, the Heiders' predecessor in title. The Heiders acquired their property from Cedoz in 1889.
 {¶ 11} In 1876, the west half of the property, 19.94 acres, was sold to George Douglas and Henry Clark. The legal description in this deed does not include the gap. The experts agreed that the grantor probably intended to convey the entire remaining west half of the property up to the western border of the Heiders' property. The west half was later conveyed to Loyal B. Curtis, who platted the Douglas Farms Addition in 1907. The plat created Lot 89, which the Robon family later purchased, and provided for the construction of Plumey Road. Upon examination of the plat map recorded in 1907 for the Douglas Farms addition, Heck determined that it appears that the intention was to match the east line of Plumey Road (with a 60 foot right of way) and east line of Lot 89, appellants' property.
 {¶ 12} The expert witness for appellants testified that an error could have occurred in the 1876 deed from the Brenots to Douglas because of the use of a different starting point for measurement than had been used in prior deeds to this area. This change resulted in the creation of the gap, which has perpetuated to this day. The gap is 11.95 feet wide at the north end, 30.24 feet wide at the south end, 2,271.46 in length. The gap consists of 1.242 acres of land.
 {¶ 13} The following evidence was presented regarding the adverse possession issue. Patrick Heider testified that he still works the family farm, which was originally purchased by his grandfather and is now owned by his brothers and himself. Patrick Heider also testified that he and his family always plowed the land north to south and plowed away from the line dividing their property from appellants' property. After the land was rented in the late 1980s, the tenant farmer plowed the land in the same manner even though he rented both farms. Access to the southern section of the farm was accomplished by crossing over to the field from Plumey Road.
 {¶ 14} During the time that he had been farming, Patrick Heider never heard a complaint that the Heiders were encroaching upon someone else's land. It was not until a recent survey was conducted that the Heiders discovered a gap between the borders of the two farms. The Heiders had been farming this gap as long as Patrick Heider could remember.
 {¶ 15} Duane Heck, a surveyor, testified that based upon his survey and observation of the area, he concluded that there is a discrepancy between the acreage description of the Heider property and how the property is farmed. He also determined that the pavement of Plumey Road measures about 12 feet wide. There is a shallow ditch on the east side of the road of approximately ten feet and then trees and shrubs and brush another ten feet or less beyond the ditch and into the gap area. Heck concluded that the eastern right-of-way line of Plumey Road is west of the gap. He observed while on the property that there was a gap between the trees along Plumey Road where farmers had been pulling in and out of the field.
 {¶ 16} Norma Heider testified that she has lived in the area for 74 years, 38 of those years at the Heider farm. The farm has been in her husband's family since the 1860s. She believed that the Robons have lived on their property since 1933. She testified that she and her husband farmed the land as far west as Plumey Road. They accessed the farm from Woodville Road, at the corner of Plumey Road where the Robons live, and further down Plumey Road south of the creek. She and her husband were assessed $17,000 for the sewers placed along Plumey Road in 1972, but the charge was deferred so long as the property is farmed. The family also farmed what they later learned was the gap area, as their ancestors had done. Her husband and later the tenant farmer plowed away from the Robon property. The tenant farmer has rented the farm for the last 15-20 years. He has also farmed the Robons' property since 1987. She recalled that her husband specifically directed the tenant farmer not to plow under the dividing line between the properties. However, after her husband died in 1993, the tenant farmer began farming the properties as one field. The Heiders did not give him permission to do so.
 {¶ 17} Norma Heider further testified that the family sought to have the fields annexed by the city of Northwood to match her home parcel in order to resolve disputes over which rescue services should respond to an incident that happened in the field. They did not annex the property to change the zoning.
 {¶ 18} Timothy Heider testified that he lived in the area until he moved in 1980. He farmed with his grandfather, father, and older brothers. The family always farmed up to the brush area along Plumey Road. They also accessed the farm at the southern edge of the field from Plumey Road. He specifically recalled his father driving the combine and trucks across the area in 1979. Again, in 1996 or 1995 he drove a pick up truck across the area looking for his son. Even though the area near the creek has always been brushy, he has always been able to drive through it. Today the brush is all gone because sewers were installed in the right of way. He did not recall the big elm tree at the corner. North of this area, the farmers plowed away from each other.
 {¶ 19} Appellants presented the following evidence. Joseph Heider testified that about five years ago he signed an option contract with a developer, but the option was never exercised. The developer proposed a large development that had no access to Plumey Road. He could not recall if the developer sought a zoning change with the Lake Township trustees. Joseph Heider further testified that his family never sought to annex to the city of Northwood for rezoning purposes. They simply wanted fire and police services to cover the entire farm. Heather Sayler, the Northwood zoning inspector, testified while there is no current rezoning application before the board, the projected future development of this area would be commercial.
 {¶ 20} Holly Wahl, the daughter of Mary Ann Robon, testified that when she was growing up, there was always about a 20-foot area along Plumey Road that included a seven-to-eight foot wide ditch and a thick growth of small trees, and brush. She could not recall playing in that area, but saw hunters in the area. She and her friends would go to the creek to climb and fish.
 {¶ 21} Mary Ann Robon testified that she was born in 1941 and lived along Plumey Road. She recalled playing along the creek area in the trees and shrubs. There were paths along the easterly line of the brush and trees on Plumey Road. The ditch was seven-to-eight feet deep. The shrubbery and trees were eight feet tall and very thick. She could not recall ever having seen the Heiders take their farm equipment out to Plumey Road. There used to be a great big elm tree at the corner where there was a curve in the road, which is now gone. There was no area near that tree for access to the Heiders' fields. She always assumed that her family owned the property past the shrubbery and the elm tree.
 {¶ 22} Rudy Robon testified that he lives two and one-half miles from the Plumey Road family home. He recalled that the land to the east of Plumey Road has always been a thicket and was almost impassable. Rudy Robon recalled that sometime after WWII, when he was about 15 years old, Clarence Heider, the Heiders' grandfather, approached Rudy Robon's father and requested permission to allow the harvester that Robon had hired to cross over the gap area to get to the Heiders' farm so he could harvest there as well. The harvester crossed the gap near the Robon house, north of the tree on the corner. Rudy Robon did not believe that farming equipment could get through anywhere but at the corner. His parents told Rudy Robon that they owned the property to the eastern edge of the brush. He further recalled that the Heiders and the Robons always plowed away from each other's property causing a gully between the two properties.
 {¶ 23} Gerald Shank, who hunted in the area, was born and raised in the area until he was about ten years old. He moved back in 1982 and lives there today. He recalled that the area east of Plumey Road has always been dense shrubbery with some very large trees. He has always hunted in the area. He never saw the Heiders come across Plumey Road and did not think it was possible so long as the deep ditch was there. He did see them enter directly across from his property at the very southern edge of their property.
 {¶ 24} We address appellants' fourth assignment of error first because many of appellants' arguments center around the erroneous premise that the Heiders had to prove adverse possession for the 21 years immediately preceding the filing of this lawsuit.
 {¶ 25} In their fourth assignment of error, appellants argue that the trial court erred and/or abused its discretion by entering the judgment upon the jury verdict when the jury's response to special interrogatory number three was inconsistent and irreconcilable with the jury's general verdict in favor of the Heiders.
 {¶ 26} If the trial court determines that the answer to a jury interrogatory is inconsistent with the general verdict, the trial court has the discretion to either return the case to the jury for further consideration of the question and their answer, enter judgment in accordance with the answer, or order a new trial. Civ.R. 49(B) and Haehnlein v. Henry (1987),41 Ohio App.3d 233, 233-234. Failure to object to the inconsistent answer before the jury is discharged results in waiver of the issue on appeal. O'Connell v. Chesapeake Ohio RR. Co. (1991),58 Ohio St.3d 226, 229, and Haehnlein v. Henry, supra at 234.
 {¶ 27} Counsel for appellees argued that they relied upon the court's statements that the answers to the jury interrogatories were consistent with the general verdict. While the court directed the attorneys to review the answers to the interrogatories and the general verdict because of the issues presented in drafting the interrogatories, the jury had been dismissed moments before. Even if an error had been discovered, it was too late to be corrected.
 {¶ 28} The only exception to the waiver rule would be plain error. O'Connell, supra. In Goldfuss v. Davidson (1997),79 Ohio St.3d 116, syllabus, the Supreme Court of Ohio held that: "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id. However, appellants failed to argue plain error in this case.
 {¶ 29} Nonetheless, we must address the issue because it involves an issue that affects the remaining assignments of error. First, we must examine the jury interrogatories and the general verdict to determine if they were inconsistent. Inconsistency alone, however, would be insufficient to establish plain error. Therefore, secondly, we must determine if entering judgment consistent with the general verdict in spite of the interrogatory answer would undermine the judicial system.
 {¶ 30} The first interrogatory to which the jury responded "yes" states:
 {¶ 31} "Do you find that the plaintiffs [the Heiders] proved by clear and convincing evidence that they exclusively possessed the `gap area' for the past 21 years from the date of this lawsuit filed in 2002, and that no one else used that `gap area?'"
 {¶ 32} The second interrogatory to which the jury responded "cannot agree" states:
 {¶ 33} "Do you find by clear and convincing evidence that the plaintiffs possessed the `gap area' continuously for the 21 consecutive years immediately preceeding [sic] the date of this lawsuit filed in 2002?"
 {¶ 34} We find that the answers to these two questions could be inconsistent with each other depending upon how the jury interpreted them. However, we also find that any inconsistency is irrelevant because the questions are based upon an erroneous interpretation of the law. The focus of both questions appears to be whether the Heiders exclusively and adversely possessed the land for the 21 years immediately preceding the filing of their action to quiet title. However, the Heiders were not required to prove that they adversely possessed the gap for 21 years immediately preceding their lawsuit.
 {¶ 35} An action filed by the titled owner of property to assert his title to property and remove an adverse possessor must be brought within 21 years after the cause of action accrued. R.C. 2305.04. Likewise, an action to quiet title in favor of the adverse possessor must be premised upon adverse possession for more than 21 years. R.C. 2305.04.
 {¶ 36} The Heiders' right to claim title to the property by adverse possession may have begun to accrue after 1876 when the deed was issued to appellants' predecessor in title. However, there was no evidence in the record as to when the Heiders began farming the gap. The only evidence presented by the Heiders was that their family had been farming the gap for at least three generations. Furthermore, the issue of who was the titled owner to the property was never determined.
 {¶ 37} Pursuant to the statute, appellants were required, if they could establish their ownership to the gap, to file a lawsuit to recover the gap from the Heiders within 21 years after the date the cause of action accrued, the date upon which the Heiders' adverse possession began. State, ex rel. A.A.A.Investments v. Columbus (1985), 17 Ohio St.3d 151, 152. Once the 21-year period of adverse possession expired, the Heiders would have acquired fee title to the gap and appellants would be barred from recovering the gap property, even if they proved that they held equitable title. Rader v. Brock (Oct. 13, 1997), 12th Dist. App. No. CA97-03-007, at 2.
 {¶ 38} Therefore, in this action to quiet title, appellants can only challenge that the Heiders did not adversely possess the property for 21 consecutive years. The fact that the gap was farmed as part of a combination of the Heiders' and appellants' properties does not defeat the Heiders' claim of adverse possession because the joint farming has only been done for approximately ten years. Once adverse possession vested, the Heiders did not need to continue to act adversely to the titled owner's property interests, but only to maintain their possessory interest. State, ex rel. A.A.A. Investments v. Columbus, supra at 152, and Rader v. Brock, supra.
 {¶ 39} The case cited by appellants, Smith v. Cares (1931),39 Ohio App. 564, actually supports the Heiders' claim to title by adverse possession. In the Smith case, the titled owner to the property was able to eject Cares from adversely possessing the property because she had not yet acquired title by adverse possession having not held the property for more than 21 years prior to the commencement of the action in ejectment. Id. at 566. The case does not stand for the proposition that the adverse possessor must bring an action to quiet title immediately at the end of the 21-year period of adverse possession.
 {¶ 40} Since the Heiders did not need to establish that they adversely possessed the gap for the 21 years immediately prior to filing their action to quiet title, the answers to the first and second interrogatories are irrelevant. Therefore, we find that entering judgment consistent with the general verdict in spite of the interrogatory answers does not undermine the judicial system. Appellants' fourth assignment of error is not well-taken.
 {¶ 41} In their first assignment of error, appellants argue that the jury verdict was not supported by the evidence. Appellants argue that the evidence presented by the Heiders does not, as a matter of law, establish adverse possession of the gap. In their second assignment of error, appellants argue that the trial court erred and/or abused its discretion when it denied their motion for a directed verdict and submitted this case to the jury. In their third assignment of error, appellants argue that the trial court erred and/or abused its discretion by denying appellants' motion for judgment notwithstanding the verdict. Thus, all three assignments of error challenge the legal sufficiency of the evidence to support the claim of adverse possession.
 {¶ 42} Civ.R. 50(A)(4) states:
 {¶ 43} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 44} Accordingly, when examining whether the trial court should have directed a verdict in favor of a party, the court determines only whether any evidence of substantial probative value exists which supports the claims of the party against whom the motion is directed. O'Day v. Webb (1972),29 Ohio St.2d 215, at paragraph four of the syllabus, and Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 69. The evidence must be construed in favor of the non-moving party and the court must find that reasonable minds could only find that the movant was entitled to judgment as a matter of law. Rayburn v. J.C.Penny Outlet Store (1982), 3 Ohio App.3d 463, 463. The test for determining a motion for a judgment notwithstanding the verdict is identical to that employed in determining a motion for a directed verdict under Civ.R. 50(A). Texler v. D.O. SummersCleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 679, andWagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 121.
 {¶ 45} The elements of adverse possession are: "exclusive, * * * open, notorious, continuous, and adverse use for a period of twenty-one years." Grace v. Koch (1998), 81 Ohio St.3d 577, syllabus, and Gill v. Fletcher (1906), 74 Ohio St. 295, paragraph three of the syllabus. These elements must be proven by clear and convincing evidence. Grace v. Koch, supra. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 46} Appellants first argue that since a tenant farmer has been farming both appellants' land and the Heiders' land as one large field since 1994, the Heiders never openly and notoriously claimed a right to the tillable area of the gap.
 {¶ 47} This argument fails because the Heiders presented evidence that they farmed the gap for more than 21 years prior to 1994. Under the doctrine of adverse possession, once the 21 years had passed, the Heiders had acquired the fee simple title to the gap. R.C. 2305.04. Once adverse possession had vested, the Heiders only needed to maintain their possessory interest.State, ex rel. A.A.A. Investments v. Columbus, supra, andRader v. Brock, supra.
 {¶ 48} The Heiders testified that they rented their farmland to the tenant farmer. While he initially complied with the request to keep the adjoining fields separate, he later abandoned that agreement and tilled the area as one large field. Since neither party was aware of the gap until recently, we may reasonably infer from the facts in evidence that the tenant farmer paid rent based upon the acreage listed in each party's deed and actually never paid rent on the gap acreage. However, there is no evidence to suggest that the Heiders knowingly gave up their right to farm the gap. To the best of anyone's knowledge, the Heiders were still reaping the benefits from farming the gap. Even if the Heiders should have been put on notice in 1994 that appellants were asserting adverse possession over the gap by the common tenant farmer farming the properties as one field, 21 years had not passed before the filing of this lawsuit to permit appellants to claim title by adverse possession.
 {¶ 49} Appellants next argue that the Heiders did not prove open and notorious use because they did not fence off or exclude others from the gap area. This argument fails because the use of the land required to obtain title by adverse possession is the typical use that the owner would employ. Vanasdal v. Brinker
(1985), 27 Ohio App. 3d 298, 299, citing Fulton v. Rapp (1950), 59 Ohio Law Abs. 105, 107. Therefore, the Heiders did not need to fence off the gap or exclude snowmobilers or hunters from using the property. The Heiders testified that they farmed the land in the same manner that their ancestors had done. Such act alone was sufficient as a matter of law to establish open and notorious use. "Open and notorious possession" means that the use must be obvious to the owner. Hindall v. Martinez (1990),69 Ohio App.3d 580, 583. Here, the Heiders openly farmed the gap. The problem was that neither party realized that the gap existed.
 {¶ 50} Appellants next contend that the Heiders failed to establish the location of the scar formed in the land where the predecessors to both parties habitually plowed away from each other in order to define the border between their two properties. Appellants argue that neither party presented evidence on this issue. We disagree.
 {¶ 51} Patrick Heider testified that a portion of the scar fell within the gap area, but he did not identify which portion or how much. Heck testified, however, that the eastern right-of-way line of Plumey Road is west of the gap. Furthermore, he testified that based upon his examination of the Douglas Farms Addition plat map recorded in 1907, it appears that the intention was to match the east line of Plumey Road (with a 60 foot right-of-way) with the east line of Lot 89, appellants' property. Because the Heider property was outside the plat map, the gap between the two lots was not discovered. Furthermore, the aerial photographs clearly evidences the scar formed by the farming practices of the two parties was formed along the eastern border of the Plumey Road right-of-way. Heck's survey clearly depicts the border of appellants' property aligning with the Plumey Road right-of-way.
 {¶ 52} Upon consideration of all of the other evidence presented, we find that there was sufficient evidence for the jury to determine the location of the scar and the western boundary of the gap.
 {¶ 53} Appellants also argue that the Heiders did not establish adverse possession of the brush area of the gap because they only produced evidence of sporadic use of the brush area to cross over to the highway. Furthermore, appellants argue that such use was not sufficient to qualify as an assertion of ownership.
 {¶ 54} We disagree with appellants' summary of the evidence presented by the Heiders. The evidenced presented by the Heiders established that they farmed nearly to the western border of the gap along Plumey Road. The Heiders also testified that they crossed over the brush area and the Plumey Road right-of-way to reach Plumey Road with farming equipment. As discussed below, the fact that the Heiders did not farm to the exact border does not defeat their claim of adverse possession. The Heiders used the property in the same manner as the true owner would have.
 {¶ 55} Therefore, we conclude that the Heiders did present sufficient evidence of adverse possession of the gap to submit the case to the jury. Accordingly, we find appellants' first, second, and third assignments of error not well-taken.
 {¶ 56} In their fifth assignment of error, appellants argue that the trial court erred and/or abused its discretion by awarding title to the entire gap area to the Heiders when the Heiders only proved, at most, an easement by prescription to cross the brush area of the gap to access Plumey Road. Appellants argue that the Heiders failed to prove that they adversely possessed the brush area of the gap along Plumey Road. We disagree.
 {¶ 57} We will not reverse the trial court's judgment as being contrary to the manifest weight of the evidence if the essential elements of the case are supported by some competent, credible evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279. Furthermore, there is a presumption that the verdict is correct because the jury had the opportunity to view the witnesses and determine their credibility. SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 58} Conflicting evidence was presented regarding the use of the southern portion of the gap along Plumey Road. The Heiders testified that they crossed the right-of-way near the southern edge of the gap on several occasions with farming equipment and a truck. They farmed near to the edge of the Plumey Road right-of-way. They hunted in the brush area. Appellants presented evidence that several members of the Robon family walked through the eastern edge of the brush area along Plumey Road to reach the creek. The testimony was not entirely clear, however, as to whether these individuals walked in the gap area versus the Plumey Road right-of-way. They also presented evidence that the dense brush and the ditch would have prevented crossing the area with farming equipment. Appellants also presented evidence that no one witnessed the Heiders crossing Plumey Road.
 {¶ 59} While conflicting evidence was presented by the parties, we find that there was competent and credible evidence to support the jury's verdict that the Heiders adversely possessed the southern area of the gap along Plumey Road. The fact that there was conflicting evidence presented would not, by itself, justify our reversal of the jury's verdict. As discussed above, the Heiders were only required to use the land as the true owner would have done. Vanasdal v. Brinker, supra. This case turns on the jury's determination of the credibility of the witnesses. Therefore, we find that the verdict was not contrary to the manifest weight of the evidence. Appellants' fifth assignment of error is not well-taken.
 {¶ 60} In their sixth assignment of error, appellants argue that the trial court erred as a matter of law and/or abused its discretion by refusing to instruct the jury that appellants were the equitably titled owners of the gap. Because adverse possession cannot be presumed, appellants assert that the jury should have known that they were the equitable title holders of the gap property. Apparently, appellants argue that the jury would have been influenced to find in favor of appellants if they had known that the Heiders were attempting to take away property that belonged to appellants.
 {¶ 61} It is undisputed in this case that neither party holds legal title to the land in the gap area. However, appellants assert that but for an error in the 1876 deed with respect to appellants' eastern boundary, they would have held legal title to the land in the gap. While appellants had previously filed a claim for reformation of their deed, the trial court stated at trial that it would take that issue under advisement because of the complexity of the issue and the fact that it would be moot if the jury decided the case in favor of the Heiders. Appellants did not object. Furthermore, appellants' only objection to the jury charge was that it did not have parallel conclusions which would have required the jury to find that either appellants or the Heiders had proved their claim for adverse possession and that the opposing party conversely acquiesced to the adverse use of the gap area.
 {¶ 62} Unless a party makes a timely objection to an error by the lower court, it is deemed waived and cannot be raised on appeal as a basis for reversal of the lower court's judgment. Civ.R. 51(A) and Schade v. Carnegie Body Co. (1982),70 Ohio St. 2d 207, paragraph one of the syllabus. The only exception to this rule would be plain error, Goldfuss v. Davidson, supra, which appellants have not argued.
 {¶ 63} Nonetheless, upon an examination of the transcript in this case, we find that the failure of the court to determine the equitable owners of the gap property prior to submitting the adverse possession case to the jury did not result in plain error. The jury had sufficient evidence before it to have an understanding of how an error might have occurred in the 1867 deed leading to the development of the gap of untitled land. Even if the court had determined that appellants were the equitable owners of the gap, we find that this information would not have affected the jury's determination of whether the Heiders and their ancestors had adversely possessed the land for at least 21 consecutive years. The very nature of an adverse possession claim informs the jury that the Heiders would be taking the gap property away from the rightful owner. Appellants' sixth assignment of error is not well-taken.
 {¶ 64} Having found that the trial court did not commit error prejudicial to appellants and that substantial justice has been done, the judgment of the Wood County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Skow, J., Parish, J., concur.